**UNITED STATES of America,
Plaintiff,**

**v.**

**Cornelius PEOPLES and Xavier
Lightfoot, Defendants.**

**No. 98–00149–01/02–CR–W–6.**

United States District Court,
W.D. Missouri,
Western Division.

Nov. 8, 1999.

Matt Whitworth, Mark Miller, Assistant
U.S. Attorneys, Kansas City, MO, for
plaintiff.

Jay D. DeHardt, McQuain, Block, De-
Hardt & Rosenbloom, P.C., Kansas City,
MO, William C. Odle, Lathrop & Gage
L.C., Kansas City, MO, for defendant Peo-
ples.

Charles M. Rogers, Wyrsch Hobbs Mir-
akian & Lee, P.C., Kansas City, MO, Su-
san McCarthy Elliott, Kansas City, MO,
for defendant Lightfoot.

SACHS, District Judge.

### PENALTY PHASE MEMORANDUM
### TO COUNSEL

This memorandum is filed subsequent to
the Government's concluding evidence in
the guilt-innocence phase of this death
penalty prosecution. 18 U.S.C. §§ 3591 *et
seq.* The allegation is that while defendant

Lightfoot was in custody on a credit union robbery charge pending in federal court in Omaha he and defendant Peoples arranged for the contract murder of a prospective Government witness, Jovan Ross. Defendants had been alerted to the informant activities of Ross when a notice was filed of other chronologically related robberies on which evidence would be offered and prospective witness information was supplied to Omaha counsel for defendant Lightfoot.

At the time of the alleged murder, Ross was living in a house in Kansas City originally rented by Lightfoot; he declined witness protection after some minimal consideration. The killing occurred on or about June 8, 1998.

Assuming arguendo that a conviction will occur, possibly during the present week, this memorandum is intended to advise counsel of the court's general view on admissibility of nonstatutory aggravators asserted by the Government under 18 U.S.C. § 3592(c). After specifying certain statutory aggravators the statute simply provides that jury consideration may then be given to "any other aggravating factor for which notice had been given...."

Defendant Lightfoot has requested and the court has granted severance of individualized issues at the penalty phase. I have advanced consideration of Lightfoot's penalty. This analysis will be limited to the notice of factors supplied as to Lightfoot.

Early in the proceeding the Government gave notice that, in addition to presenting evidence of victim impact on the Ross family, particularly his mother, and the circumstances of the crime (obstruction of justice and retaliation for witness cooperation) it would seek consideration of "future dangerousness" (to be inferred from past criminal conduct, charged and uncharged) and Lightfoot's felony criminal record, to the extent not admissible as statutory aggravators.

The court's consideration will be limited to the scope of "future dangerousness" evidence and the nonstatutory criminal record. My present view is that the statutory criminal record is exhaustive and that the nonstatutory criminal record is inadmissible under the structure and wording of 18 U.S.C. § 3592(c). I further conclude that "future dangerousness" is to be confined to analysis of past activities and propensities for danger to inmates and prison staff, under a realistic and careful approach well articulated in *United States v. Davis*, 912 F.Supp. 938 (E.D.La.1996).

Although briefing by the parties has been filed, it deals largely with issues of policy, past practice in state and federal court and constitutionality, none of which is particularly helpful to consideration of the structure and effect of the statute that Congress enacted in 1994. The Government's citation of the *Davis* case has been helpful, although the Government fails to deal with the *Davis* rulings adverse to its approach other than to concede that there is a "threshold test of heightened reliability needed in death penalty sentencing hearings." It goes on, however, to note that "relaxed evidentiary standards" are used at sentencing. *But see United States v. Beckford*, 964 F.Supp. 993, 1002, 1005 (E.D.Va.1997) ("firm evidentiary support" may be demanded to provide "further indicia of reliability before a court can say that the probative value of any such hearsay outweighs its prejudicial potential").

It seems to be the Government's view that sentencing practices in ordinary federal criminal cases should be generally used, with some broadening of approach authorized by "future dangerousness" analysis. This is not what Congress specified.

\* \* \* \* \* \*

Dealing first with criminal records as such, it is quite clear that Congress intended the jury to consider a limited range of "deathworthy" criminal convictions. For example, a statutory aggravator may be asserted when a defendant has been *twice* convicted of felonies charging infliction or attempted infliction of serious bodily injury or death. 18 U.S.C. § 3592(c)(4). Under the prosecution's theory, a single such conviction could be asserted as part of a nonstatutory criminal history record. The

jury would not be informed that the statutory convictions are more significant than the nonstatutory convictions. In jury deliberations, therefore, a single conviction that does not qualify under the statute could be weighed as heavily as one of the statutory convictions that Congress deemed a deathworthy factor.

■ This contention cannot reflect the intent of Congress. Nonstatutory criminal records must therefore be excluded, except insofar as they may support some other theory of aggravation.

Six convictions are asserted for defendant Lightfoot under a category unrelated to future dangerousness. These include stealing, tampering and burglary convictions, receiving stolen property and unlawful possession of a weapon. The court does not expect to allow this record to be presented to the jury at any penalty phase proceeding.

In this ruling the court is mindful of footnote 25 in the *Davis* case, where Judge Berrigan rejected a similar contention from the defendants in Louisiana. In order to give some realistic meaning to the careful selection by Congress of deathworthy criminal history factors, I must respectfully disagree with that conclusion. Apart from the *Davis* case I have found no judicial consideration of the Congressional selectivity exercised in listing criminal history factors that may be presented as aggravators to a death penalty jury.

■ What may have been widely accepted as a matter of past practice in federal criminal sentencing is plainly unlike what a death penalty jury may appropriately consider. Tampering and dealing in stolen goods may well alter judicial views as to the number of months a defendant should serve in federal prison. They are pernicious distractions, however, in considering whether a defendant shall live or die. For

evidence to be relevant, the statute must mean that the evidence tendered bears on "the consideration of who should live and who should die." *Davis*, 912 F.Supp. at 943.

I am mindful that defendants are allowed to offer what many would consider frivolous issues in mitigation. When empaneling the jury it was clear that some members of the public are put off by so-called mitigators that offend the sense of moral responsibility for a grave crime. Whether such mitigators are presented, however, is left to the tactical sense of defense counsel. In this and other respects, procedural mutuality does not occur when a sentence of death is requested.[1]

\* \* \* \* \* \*

On the future dangerousness issue, I find the *Davis* decision to offer excellent guidance, both in rejecting and accepting certain alleged aggravators. It does fail to note, however, that dangerousness should not be measured in the same manner as if a defendant were to be "uncaged"; life in prison without parole, a firmly fixed federal requirement, must mean that the focus of dangerousness analysis is on prison conditions.[2] Subsequent to *Davis*, at least two judges, both in Kansas, have noted the institutional issue presented by a "future dangerousness" argument. *United States v. Glover*, 43 F.Supp.2d, 1217, 1227 n. 6 (D.Kan.1999); *United States v. Nguyen*, 928 F.Supp. 1525, 1542 n. 14 (D.Kan.1996). Thus the prosecution seems to be engaged in some excess in advocacy. Braking to the speed limit contemplated by statute has been left to the court.

The notice given lists eleven claims of misconduct allegedly giving rise to an inference of future dangerousness. Armed robbery of the Omaha credit union and two jewelry stores in evidence as motivators in this case constitute three of the instances

---

1. Perhaps it should be acknowledged that the force of this ruling may be diminished by the fact that the jury has learned—for better or worse—that defendant Lightfoot is in effect a career offender. The proposed evidence would be cumulative.

2. In seeking a dangerousness expert, defendants sought expertise on prison condition statistics. Their approach was sound, but the magistrate judge and I rejected funding for other reasons.

cited. I suppose they legitimately support an inference of recklessness and at least some significant danger in prison. Six uncharged burglaries are listed. Possession of a weapon during an auto theft is listed. Most obviously pertinent (depending on evidentiary support) is the listing of an uncharged sexual assault, described as "forcible sodomy against an inmate at the Douglas County Jail in Omaha, Nebraska, on or about 1998, while awaiting trial for federal robbery charges...."

Without finally ruling on tendered evidence at this time, I suppose that the uncharged burglaries cannot be adequately related to the ultimate claim of dangerousness in federal prison. The Omaha robberies will be before the jury in any event, and the issue could be more one of double-counting than dangerousness. *Davis,* 912 F.Supp. at 946. Simple possession of a weapon during an auto theft in 1990 seems unlikely to be relevant to current dangerousness in prison, although argument is invited. The sodomy allegation seems to have clear bearing on prison safety. Further comment may be unwarranted, given the absence of explanation of what proof would be offered by the Government. It may be noted, however, that the proof that defendant Lightfoot is HIV positive adds a dimension to this allegation, if evidence passing the heightened reliability test would establish a sexually unprotected assault on a "clean" prisoner, thus posing a danger of a potentially fatal illness.[3]

\*     \*     \*     \*     \*     \*

The parties may find guidance in the foregoing discussion of my anticipated approach to evidentiary rulings in the presentation of proof at the penalty phase. Doubtless the Government will take strenuous issue with some anticipated rulings.

I remain available for further education on these points, although counsel have not picked up on random comments along the lines here presented.

If there is a conviction I do not belittle the Government's prospects for satisfying the jury that the death penalty is appropriate for defendant Lightfoot. The offense is one of the more serious in the category of crimes deemed deathworthy by Congress. It may be that if rulings are made along the lines of this memorandum and the *Davis* case (which I commend to counsel for careful study), it would actually advance the Government's claim for the death penalty. The penalty phase proof and arguments would then be focused on the Government's strongest points.[4] It is of course not my intention to intrude unnecessarily on prosecutorial discretion or the reasonable scope of jury deliberation or to "help" one side or the other. The gatekeeping or screening role of the court is, however, particularly significant in these cases. *Davis,* 912 F.Supp. at 941, 944.

### ORDER

The jury having convicted defendant Lightfoot of murdering a federal witness, the Government requests leave to present evidence of uncharged burglaries and evidence of burglary convictions as aggravators. All other listed aggravators except those developed during the guilt-innocence phase of the trial are abandoned because an adequate evidentiary basis is not available.

▆ Burglary convictions will not be admitted in evidence, simply as additional criminal history, for reasons stated in my memorandum to counsel filed November 8, 1999.[1] The evidence would confuse the

---

3. The ability of federal prisoners to be protected from such assaults is an open question. I do not know whether the parties are prepared with evidence of segregation, surveillance, etc. that would have some bearing on defendant's sexual dangerousness.

4. Who knows the criminal history record of Bruno Richard Hauptmann?

1. The Government has now cited several cases in which objections to additional non-statutory criminal record items were rejected. *See, e.g., United States v. Walker,* 910 F.Supp. 837, 854–5 (N.D.N.Y.1995). It is not clear how those defendants' arguments were presented. I agree with the *Walker* commentary, drawn from another case, that "statutory aggravating factors cannot be reasonably inter-

jury because it falls below the categories of serious crimes specifically authorized as facts to be considered in a capital case. To the extent the Government now wishes to offer such convictions as evidence of dangerousness the request will be denied because not so characterized previously.

█ The evidence of uncharged burglaries will not be permitted because I doubt its status as relevant evidence of dangerousness in a prison setting, and because the jury has already been adequately informed that defendant is, in essence, a career criminal. Further detail beyond the trial testimony is inappropriate.

For the reasons stated, leave to present the evidence above-described is hereby DENIED.

preted to provide a ceiling as to the information which may be submitted to the jury." 910 F.Supp. at 855. It is my view, however, that when a particular factor, criminal history, is given a restricted meaning in the statutory aggravators that factor cannot, by any fair reading, be given a second and more abundant life as a nonstatutory aggravator. Special features in a prior criminal record could be presented as aggravators if they are of a nature that has relevance to the choice between life imprisonment and death.