**UNITED STATES of America, Plaintiff,**

v.

**Richard Lee Tuck CHONG, aka "China", Defendant.**

**No. 98–CR–416 ACK.**

United States District Court, D. Hawaii.

Dec. 15, 1999.

---

See, also, 58 F. Supp.2d 1153.

Michael A. Weight, Office of the Federal Public Defenders, Honolulu, HI, Marcia A. Morrissey, Santa Monica, CA, for Richard Lee Tuk Chong aka "China", defendant.

## *ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S VARIOUS OBJECTIONS TO THE GOVERNMENT'S PROFFERED PENALTY PHASE EVIDENCE*

KAY, District Judge.

### *BACKGROUND*

On November 3, 1999, Defendant filed a Motion to Preclude Non–Statutory Aggravation Based on Threats or Mere Words and Conduct Not Serious Enough to Justify a Sentence of Death. Defendant contends that much of the evidence proffered by the Government as nonstatutory aggravating factors must be excluded because it is not serious enough, and therefore not relevant enough, to warrant consideration of the death penalty. In this motion, Defendant focuses on three types of nonstatutory aggravating information: information based on threats alone, information based on threats accompanied by conduct that is not seriously violent, and information remote in time. The Government filed its opposition on November 12, 1999. Defendant filed a reply on November 15, 1999, and the Government filed a supplemental response on November 16, 1999.[1]

In a related motion filed on November 3, 1999, Defendant raised various objections to the penalty phase evidence proffered by the Government. The Government filed its opposition to that motion on November 12, 1999, and Defendant filed his reply on November 15, 1999.

Again on November 3, 1999, Defendant filed a related motion to exclude the Kosnik and Isa incidents from being considered as statutory aggravators in Part I.B.2. On November 12, 1999, the Government filed its response agreeing to shift these incidents from statutory aggravation to nonstatutory aggravation.

The Court held a hearing on these and other penalty phase motions on November 18, 1999. During that hearing, the Court ordered the parties to provide supplemental briefing on certain issues, namely whether the Government is limited to proving convictions by a judgment of conviction, or whether it is entitled to introduce other evidence explaining the underlying circumstances.

On November 22, 1999, Defendant filed a voluminous memorandum addressing various penalty phase issues. On November 23, 1999, the Government filed its proffer of authority and argument in support of the introduction of the underlying facts

---

1. This supplemental response only addressed two issues. First, it stated the Government's intention to withdraw the juvenile adjudications nonstatutory aggravating factor for lack of evidence. Second, it stated that the Government would seek to amend the convictions underlying the nonstatutory aggravating factor of adult criminal convictions.

supporting the statutory aggravating conviction factor. Finally, the Government filed a response to Defendant's supplemental memorandum on November 26, 1999. On December 1, 1999, the Court sua sponte struck unresponsive portions of these briefs. Finally, on December 10, 1999, Defendant filed a notice of newly discovered authority regarding nonstatutory aggravating factors, referring to *United States v. Peoples*, 1999 WL 1044199 (W.D.Mo. Nov.8, 1999).

## DISCUSSION

The Court will address each of Defendant's objections in turn. In order to avoid needless repetition, the Court will begin by discussing the twin concerns of relevance and reliability within the context of the Federal Death Penalty act. The Court will then address Defendant's global objections, before finally considering each piece of penalty phase information proffered by the Government in light of Defendant's remaining objections.

## I DETERMINING RELEVANCE AND RELIABILITY WITHIN THE CONTEXT OF THE FEDERAL DEATH PENALTY ACT.

### A. RELIABILITY.

During the penalty phase, the Federal Death Penalty Act requires the sentencing jury to make an initial determination of death-eligibility before weighing the aggravating and mitigating factors to determine whether a sentence of death is appropriate. In its August 17, 1999 Order, the Court discussed the standard required by the Act for admissibility:

> Section 3593(c) provides for the admission of "information" regarding aggravating and mitigating factors at the penalty phase of a capital trial. That information is admissible "regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is out-

weighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). The Court finds this modified version of Rule 403 particularly compelling in deciding that § 3593(c) is constitutional because it actually incorporates a higher standard of reliability than that provided by the Federal Rules of Evidence.

Order, Aug. 17, 1999, at 20.

The Government maintains that the Federal Rules of Evidence do not apply because the penalty phase is, essentially, a sentencing proceeding and the rules of evidence traditionally do not apply to sentencing proceedings. Conversely, Defendant contends that the Government "misapprehends the import of the fact that [the Federal Rules of Evidence] do not apply." Defendant's Reply, Nov. 15, 1999, at 16. From Defendant's perspective, a "heightened degree of reliability is required, not a lesser degree," because this is a capital sentencing proceeding. *Id.* Thus, Defendant argues, the reason why the Federal Rules of Evidence do not apply during the penalty phase is because they would admit too much aggravating information.

Recognizing the heightened reliability standard incorporated in the Federal Death Penalty Act, the Court still disagrees with Defendant's overbroad conclusion that all information that would not be admissible under the Federal Rules of Evidence is inadmissible during the penalty phase. First, this would render the statute's express statement that the Federal Rules of Evidence do not apply meaningless. Second, it would severely hamper compliance with the Supreme Court's mandate to particularize sentencing proceedings to each individual defendant. *See Jurek v. Texas*, 428 U.S. 262, 276, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).

The Court refuses to apply any such per se rule, but instead will consider the relevance, reliability, probative value, and unfair prejudicial impact of each piece of

information in accordance with the statutory requirements. *See United States v. Jones*, 132 F.3d 232, 241 (5th Cir.1998) (permitting "any relevant information during the sentencing hearing limited by the caveat that such information be relevant, reliable, and its probative value must outweigh the danger of unfair prejudice"); *United States v. Frank*, 8 F.Supp.2d 253, 269 (S.D.N.Y.1998) ("Section 3593 guards against the use of information that will unfairly prejudice the defendant, while allowing in all relevant information that would assist the jury in determining whether the individual defendant before them should be sentenced to death."); *United States v. Nguyen*, 928 F.Supp. 1525, 1546 (D.Kan.1996) ("While the court agrees that heightened reliability is essential to the capital process, it must be balanced with the need for a jury to have ample information regarding the offense and offender in order to make an individualized sentencing determination.").

## B. *RELEVANCE.*

■■■ In addition to being reliable, the Federal Death Penalty Act also requires that information be relevant. The Court does not address this question in a vacuum. In its August 17, 1999 Order, the Court noted that the Federal Death Penalty Act provides "the jury with all relevant facts sufficient to enable the jury to determine whether the death penalty is appropriate in that particular case." Order, Aug. 17, 1999, at 48.

At the outset, the Court observes that this standard comports with the Supreme Court's mandate to particularize capital sentencing proceedings. *See, e.g., Jurek v. Texas*, 428 U.S. 262, 276, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) ("[W]hat is essential is that a jury have before it all possible relevant information about the individual defendant whose fate it must determine."); *Tuilaepa v. California*, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994); *Gregg v. Georgia*, 428 U.S. 153, 203–04, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). More-

over, the Court emphasizes that many other courts have interpreted the Act's admissibility standard to require information particularized to the individual defendant. *See, e.g., United States v. Frank*, 8 F.Supp.2d 253 (S.D.N.Y.1998). In *Frank*, the district court stated:

> The preference for allowing non-statutory factors in addition to all available mitigating evidence comes from the Supreme Court's view that "*[w]hat is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine.*" *Jurek*, 428 U.S. at 276, 96 S.Ct. 2950 (1976). The FDPA's use of non-statutory aggravating factors borrows a structure employed in the very first death penalty statute upheld by the Court, which allowed the jury to consider "any other appropriate aggravating factor" after it had found one of the statutory aggravating factors to exist. *Gregg*, 428 U.S. at 197, 96 S.Ct. 2909. Indeed, once the jury's discretion has been sufficiently guided in determining whether the defendant is eligible for the death penalty, the jury may be given "unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." [citations omitted].

*Id.* at 265 (emphasis added).

The Court also finds that Congress intended to have capital sentencing proceedings particularized to each defendant. *See Frank* 8 F.Supp.2d at 279 ("If Congress had meant the statutory aggravating factors to provide an exhaustive list of factors that could be submitted with respect to the defendant's past criminal behavior and future propensities, it would have said so, and nowhere in the statutory language is such an exclusion even implied."); *United States v. Spivey*, 958 F.Supp. 1523, 1534 (D.N.M.1997) (holding, in the context of § 848, that Congress did not intend to preclude consideration of nonstatutory ag-

gravating factors simply by defining statutory aggravating factors).

The Court is not persuaded by Defendant's reliance on *United States v. Davis*, 912 F.Supp. 938, 943 (E.D.La.1996), that, to be relevant, each individual piece of information must by itself be sufficient to justify the imposition of a sentence of death. In *Davis*, the district court started from the premise that information, to be relevant:

> must [be] sufficiently relevant to the consideration of who should live and who should die. What might be relevant in an administrative disciplinary proceeding, or even in a sentencing hearing where the choices are between varying terms of imprisonment, is not necessarily sufficiently relevant to deciding who should be sentenced to death.

*Id.* at 943. However, the only basis for starting from this premise was that the statutory aggravating factors provide a ready framework for evaluating the relevance and admissibility of nonstatutory aggravating factors. The court reasoned that:

> [t]o carefully define the statutory aggravating factors, but then allow wholesale introduction of nonstatutory aggravating information, would defeat the goal of guided and measurable jury discretion, and return us to an unconstitutional system where the death penalty is "wantonly" and "freakishly" imposed. It cannot be presumed that Congress intended to create a statute that is so self-defeating, much less one that would be unconstitutional.

*Id.* Because the Court finds that Congress did not intend to limit nonstatutory aggra-

vating factors simply by defining the statutory aggravating factors, the Court finds the *Davis* court's approach unpersuasive. Accordingly, the Court finds that information, to be relevant, must provide some evidence in support of a statutory or nonstatutory aggravating factor alleged by the Government. The Court finds that each particular piece of information need not be sufficient, by itself, to prove the alleged aggravating factor beyond a reasonable doubt.[2] Accordingly, the Court DENIES Defendant's objections that mere threats, words and conduct that, according to Defendant, is not serious enough to warrant imposition of the death penalty should be precluded.

## II DEFENDANT'S GLOBAL OBJECTIONS.

### A. INFORMATION REMOTE IN TIME.

█ Defendant argues that the majority of the conduct identified in the death penalty notice occurred more than ten years ago and should not be admitted because it is too remote in time. The Court recognizes that "other act" evidence is not admissible under Rule 404(b) if, inter alia, the prior act is too remote in time. *See United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1013 (9th Cir.1995). However, this is not determinative for several reasons. First, the Federal Rules of Evidence do not apply to the penalty phase. Second, the Court is cognizant of the Supreme Court's mandate, echoed in the structure of the Federal Death Penalty Act itself, to particularize the sentencing process of a capital case for each individual defendant. Accordingly, the Court refuses to adopt a per se rule that any acts occur-

---

**2.** In reaching this conclusion, the Court finds Defendant's reliance on *Richardson v. United States*, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), misplaced. Contrary to Defendant's argument, *Richardson* does not stand for the proposition that the Government must prove each item of information in support of a particular aggravating factor beyond a reasonable doubt. Rather, the *Richardson* Court simply held that, in a death penalty

case brought under the continuing criminal enterprise section of § 848, the jury must unanimously agree about which specific violations make up the continuing series of violations. *See id.* at 1713. Under Defendant's interpretation, the *Richardson* Court would have had to have held that the each piece of evidence underlying each specific violation would have to be shown beyond a reasonable doubt. It did not.

ring more than ten years ago are inadmissible.[3]

## B. *APPLICABILITY OF RULE 803(6)'S BUSINESS RECORDS EXCEPTION.*

■ Because Defendant has raised numerous hearsay objections to the Government's evidence, the Court will briefly discuss the applicability of Federal Rule of Evidence 803(6). This rule constitutes the business records exception and provides for the admissibility of:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed.R.Evid. 803(6).

The Government contends that, even if the Court considers the applicability of the Federal Rules of Evidence during the penalty phase, many of the records it intends to offer fall within this exception. The Government emphasizes that the correctional officers had a duty to report prisoner disciplinary problems, that some of these reports were used at due process hearings concerning appropriate disciplinary measures, and that they were made by persons with knowledge at or near the time of the incidents described therein.

Conversely, Defendant contends that these records are inherently untrustworthy and, hence, inadmissible. Defendant argues that the correctional officers were motivated to make unfavorable records because they were involved in the proceedings and that this fact erodes the reliability of the prison records. Defendant further contends that these reports were not generated with sufficient regularity to qualify for this hearsay exception because prisoners do not misbehave on a regular basis.

The Court finds the Government's position more persuasive. The Court recognizes that the reporting officers were involved in the conduct that resulted in the unfavorable write-up. This fact cuts both ways. The reliability of the reports is reinforced because the reporting officers personally observed the misbehavior; yet it is also undermined because the reporting officers, who may have been the targets of the misbehavior, might have an incentive to distort the truth. However, these are not the only concerns that influence the Court's decision.

The Court also recognizes that the correctional officers are trained to report disciplinary problems and that, in the context of a large prison population, they actually do write these reports on a regular basis. Moreover, the Court finds that their reliability is further enhanced by the consistency of these reports over time, in different prison locations, and from different correctional officers. This conclusion is reinforced by the Advisory Committee Notes

---

**3.** In its August 17, 1999 Order, the Court previously noted that:

it is permitted to consider evidence of remote crimes in non-capital sentencing contexts to determine where the defendant's sentence should fall within the applicable guideline range. *See* U.S.S.G. § 1B1.4 ("In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law.").

Order, Aug. 17, 1999, at 67.

to Rule 803(6), which recognize that reports generated by a police officer can qualify under this exception, although not if the police officer's report merely incorporates information obtained from a bystander. *See* Fed.R.Evid. 803(6) advisory committee's note (¶ 6). The Court finds that the Government may avail itself of Rule 803(6)'s hearsay exception in the context of the sentencing proceeding so long as the reports are based upon the reporting officer's personal observations.[4] Accordingly, the Court rejects Defendant's global objection that all correctional officers' reports concerning his misbehavior in prison are inadmissible because they contain hearsay not subject to any exception.

### C. INCIDENTS NOT ORIGINALLY INCLUDED IN THE DEATH PENALTY NOTICE.

Defendant also argues that all incidents not included in the death penalty notice must be precluded. On December 9, 1999, the Court held a hearing on the Government's motion to amend its death penalty notice and Defendant's objections thereto. At the conclusion of that hearing, the Court issued an oral ruling granting the Government's motion to amend the death penalty notice, and granting in part and denying in part Defendant's specific objections thereto. The Court also ruled that the Government will be precluded from introducing information at trial concerning incidents that are not specifically included in the death penalty notice.

### D. AUTHENTICATION.

■ Without citing any case authority, Defendant also argues that "the authentication standards of the Federal Rules of Evidence may not be sufficiently reliable to accord with the heightened reliability required of the records the government proffers...." Defendant's Reply, Nov. 15, 1999, at 23. In particular, Defendant insists that, to be properly authenticated, the record must be authenticated by the original custodian of records who received the records when they were made. The Court disagrees. Although the Court will require that various documentary information be properly authenticated, the Court finds Defendant's heightened authentication standard, which lacks any support in the relevant case law, to be completely devoid of merit.

### E. INFORMATION SURROUNDING DEFENDANT'S PRIOR CONVICTIONS.

■ Defendant contends that the Government must be limited to proving any prior conviction introduced as a statutory or nonstatutory aggravating factor by means of a certified copy of the judgment of conviction. In support of this contention, Defendant raises several arguments. First, Defendant maintains that allowing the Government to introduce information underlying the judgment of conviction would violate the Federal Death Penalty Act and the Constitution because it would constitute double-counting. *See* Defendant's Supplemental Memorandum, Nov. 22, 1999, at 1. Second, Defendant contends that the Federal Death Penalty Statute itself limits information to the judgment of conviction. *See id.* at 3. Finally, Defendant contends that this interpretation is supported by non-capital case law from the Supreme Court and the Ninth Circuit. *See id.* at 4–5.

Conversely, the Government argues that such information is admissible for two reasons. First, the Government contends that the Federal Death Penalty Act expressly provides that "any information rel-

---

4. The Court reiterates that the Rules of Evidence do not apply in the penalty phase of the trial, and the admissibility of information is governed by considerations of relevance and reliability in conjunction with a modified Rule 403 analysis. Although the rules of evidence do not apply, the fact that this information falls within a recognized hearsay exception reinforces its reliability.

evant to an aggravating factor" is admissible. Government's Supplemental Proffer, Nov. 23, 1999, at 2 (quoting 18 U.S.C. § 3593(c)). Second, the Government emphasizes that the Federal Death Penalty Act is a weighing statute and that the jury must be informed of the circumstances underlying the prior convictions in order properly weigh the aggravating and mitigating information.

The Court finds that the Government is entitled to introduce information underlying Defendant's prior convictions, and not just the judgment of conviction itself. In reaching this conclusion, the Court finds that the Federal Death Penalty Act expressly provides that "[t]he government may present *any* information relevant to an aggravating factor for which notice has been provided" subject only to modified Rule 403 considerations of unfair prejudice, confusing the issues, or misleading the jury. 18 U.S.C. § 3593(c) (emphasis added).

The Court is not persuaded by Defendant's argument that § 3592(c), which provides that certain prior convictions can serve as statutory aggravating factors, limits penalty phase information to a judgment of conviction. By way of illustration, § 3592(c)(2) includes the following statutory aggravating factor:

> Previous conviction of violent felony involving firearm.—For any offense, other than an offense for which a sentence of death is sought on the basis of section 924(c), the defendant has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a firearm (as defined in section 921) against another person.

18 U.S.C. § 3592(c)(2). The Court finds nothing in this language, or the language of any other statutory aggravating factor involving prior convictions, that limits evidence of a prior conviction to a judgment of conviction. Moreover, Defendant's argument that the statute provides that the jury is only to consider the fact of conviction, rather than the conduct underlying the conviction, flies in the face of the Supreme Court's mandate to particularize capital sentencing proceedings. *See Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).[5]

Furthermore, the Court is persuaded by the Government's argument that the Federal Death Penalty Act is a weighing statute and that the jury must be aware of the circumstances underlying the prior convictions in order for it to properly weigh the information in aggravation and mitigation. The Court recognizes that the jury must initially make certain death-eligibility findings, namely the existence of a gateway intent factor and at least one statutory aggravating factor. However, once the jury finds that Defendant is death-eligible, it must then weigh the information in aggravation and mitigation in order to determine whether death is appropriate. Thus, in order to particularize the sentence, the jury must be permitted to hear information regarding the circumstances underlying the prior convictions.

The Court finds Defendant's double-counting concern unfounded because the Government does not seek to introduce aggravating factors that are duplicative. Furthermore, the Court finds that the non-capital cases cited by Defendant are inapposite. Defendant cites to several cases for the proposition that courts, in order to determine whether a prior offense qualified to enhance a defendant's sen-

---

**5.** The Court also notes that the conviction records stemming from the statutory aggravating factor do not, on their face, prove the aggravating factor. Exhibit A to the Government's Response simply reflects the convictions of Robbery, Burglary, and Kidnapping. Exhibit B evidences the conviction of "possession of a firearm by a person convicted of certain crimes." Government's Response, Nov. 26, 1999, Exh. A & B.

tence, must apply a categorical approach and avoid any inquiry into the facts underlying the prior conviction. *See Taylor v. United States*, 495 U.S. 575, 601–02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (holding that court must only look to category of the offense, rather than the facts underlying the conviction, in determining whether to enhance a defendant's sentence based upon his previous felony convictions); *United States v. Riley*, 183 F.3d 1155, 1158 (9th Cir.1999) (applying a categorical approach to determine whether a conviction qualifies as a crime of violence under the Sentencing Guidelines' career offender provision); *United States v. Parker*, 5 F.3d 1322, 1324 (9th Cir.1993) (same). The Court finds these decisions completely inapposite because they do not arise in the capital context, do not take into account the language of the Federal Death Penalty Act providing for the introduction of "any" relevant information in support of aggravating factors, and do not consider the Supreme Court's mandate to particularize capital sentencing proceedings.

Accordingly, the Court concludes that the Government is entitled to introduce information concerning the underlying circumstances of Defendant's prior convictions. However, the Court cautions both parties that such information should be limited. The Court will not permit either party to relitigate the merits underlying the convictions because of concerns of waste of time, cumulative evidence, and confusion of the issues. However, the Court will permit an appropriate amount of information to provide the necessary context for the jury to perform its weighing function.[6]

### F. ESCAPE ATTEMPTS.

■ Defendant also argues that information concerning Defendant's escape attempts should be deemed inadmissible because these escape attempts did not involve any serious threat of violence. Defendant argues that the Court has limited information concerning escape attempts to those attempts that posed an actual threat of violence. Contrary to Defendant's assertions, the Court has made no such determination. The Court has merely held that the Government may not argue that Defendant poses a future danger to the community. Although Defendant's previous escape attempts have not involved serious violence or injury to prison personnel, the Court still finds that his history of escape attempts is relevant. This information supports a legitimate inference that Defendant might physically injure, or cause to be injured, prison personnel during a future escape attempt.[7]

### G. OPINION TESTIMONY BY GOVERNMENT FACT WITNESSES.

Defendant frequently objects to (allegedly) improper opinion testimony offered by the Government's fact witnesses. The Court finds that the Government's fact witnesses will be limited to testifying as to their personal observations of Defendant and his actions. The witnesses will not be permitted to offer opinion testimony.

### III DEFENDANT'S SPECIFIC EVI-

6. On a somewhat related note, Defendant argues that the Government must be precluded from introducing "cumulative multiple convictions arising from a single criminal course of conduct as supportive of the single conviction required by the statutory aggravating circumstance defined by 18 U.S.C. § 3592(c)(2)." Defendant's Supplemental Memorandum, Nov. 22, 1999, at 7. Defendant argues that § 3592(c)(2) guides the jury to consider only whether "the defendant has previously been *convicted* of *a* Federal or State *offense* . . . ." *Id.* at 7 – 8 (emphasis in original). The Court struck this argument (and others) on December 1, 1999 and will not consider it here.

7. As explained in the Court's Order granting the Government's motion to amend the death penalty notice, the Court will require both the Escapes and Parole Violations nonstatutory aggravating factors to be included within the Future Dangerousness in Prison factor.

DENTIARY OBJECTIONS.[8]

## A. FUTURE DANGEROUSNESS IN PRISON.

### 1 1/18/69 threat to guard J.B. Nicholson (2a,10).

 The Court will permit the Government to introduce information surrounding Defendant's threat to guard J.B. Nicholson. Defendant stated: "You fucking punk, when I get out of here I am going to kill you, you no good bastard. Come in here now and I will kill you." Specifically, Defendant argues that this information constitutes hearsay, is too remote, and constitutes mere words. The Court has addressed these contentions above, and finds that the probative value of this information outweighs any undue prejudice.

The Court will elaborate only with regard to Defendant's hearsay objection. The Court finds that this information is admissible because it falls within 803(6)'s hearsay exception—the report is factual in nature and was generated by a person who had personal knowledge of the event who had a duty to report such an incident. The reliability of this report is further reinforced because Defendant was informed of the charges and given an opportunity to respond prior to being placed on isolation row for two weeks. Moreover, there is no double hearsay problem because the threat constitutes an admission of a party opponent.

### 2 5/1/69 assault on inmate Kahalewai (2b,11; 2c,12; 2d,12).

 The Court will permit the Government to introduce information surrounding Defendant's altercation with another inmate, including the testimony of guard Gordon Pattison, the testimony of guard John Abram, and prison records. Defendant raises the following general objections: remoteness in time and non-serious conduct. The Court has addressed these contentions above, and finds that the probative value of this information outweighs any undue prejudice.

Specifically, the Court will permit the testimony of Gordon Pattison. Defendant argues that Mr. Pattison cannot recall the details of the incident and that it "seems like a dream" to him. If Mr. Pattison cannot recall the incident, then the Court will permit his report to be read as information pursuant to Rule 803(5)'s recorded recollection exception. The Court also finds the testimony of guard John Abram reliable because he was a percipient witness to the events in question. Finally, the prison records are admissible because they were created by the witnesses who will testify during the penalty phase.[9]

### 3 8/26/99 threat to kill guard Vasconcellos (2e,12; 2f,13; 2g,14).

The Court will permit the Government to introduce information surrounding Defendant's threat to kill guard Stephen Vasconcellos. The Government intends to introduce the testimony of guard Vasconcellos and guard Elwood Reynolds, as well as prison records. Defendant raises the following objections: mere words, remoteness in time, and inadmissible opinion. The Court has previously addressed these objections. The Court finds that the testimony of Mr. Vasconcellos and Mr. Reynolds is admissible, but shall be limited to their personal observations. Moreover, the prison records are admissible because

---

8. For ease of reference, the Court will note the Government's designation of evidence (by letter) in its October 18, 1999 letter to defense counsel providing an evidentiary summary of certain penalty phase evidence. *See* Government's Response, Nov. 12, 1999, Exh. A. The Court will also note the page in Defendant's brief, filed November 3, 1999, in which Defendant raises his specific objections.

9. The Court is aware that one report was generated by Officer Awan Chang, who will not be called to testify. However, this report is corroborated by the testimony and reports of Gordon Pattison and John Abram and is, therefore, admissible.

they were created by the officers who will testify during the penalty phase.

#### 4 9/12/69 boxing ring incident (2h,15; add. 2a,34).

■ The Court will permit the Government to introduce evidence that Defendant jumped into the boxing ring during a boxing match. The Government intends to introduce prison reports written by officers who personally observed the events in question, as well as the testimony of James F. Watts. Defendant raises the following objections: hearsay, non-serious conduct, cumulative evidence, inadmissible opinion, and lack of notice. The Court has previously rejected these arguments, and finds that the probative value of this information outweighs any undue prejudice. Accordingly, the Court will permit Mr. Watts to testify because he was a percipient witness to the events in question; moreover, the Court will admit the prison records (some of which were created by Mr. Watts) because they are corroborated by the testimony of the Government's witness.

#### 5 10/5/70 harassment of guard (2i,15).

■ The Court will not permit the Government to introduce information surrounding Defendant's harassment of a guard on October 5, 1970 (Defendant ran down a corridor shouting "kill," then said to the guard "I like punch your face" and "Get the fuck out of here—stay the fuck out of here.") Defendant raises the following objections: hearsay, remoteness in time. The Court finds that exclusion of this information is proper given its cumulative nature and potential to waste time.

#### 6 10/24/70 harassment of guard and involvement with contraband (2j,16).

■ The Court will prohibit the Government from introducing information surrounding Defendant's attempt to smuggle in a pair of slippers during a visit with his parents and his subsequent threat to "get" the guard who noticed the switch. Defen-

dant raises the following objections: remoteness in time, non-serious conduct, and hearsay. The Court finds none of these reasons persuasive, but will preclude this information because it is cumulative of information surrounding Defendant's numerous other threats to prison personnel.

#### 7 2/5/71 glue sniff and approaching prison official in a threatening manner (2k,16; 2l,17; add. 2b,34).

■ The Court will permit the Government to introduce information that Defendant was caught sniffing glue and, while appearing before a prison disciplinary board, approached the prison superintendent in a threatening manner. The Government offers the testimony of William Okeson, who caught Defendant sniffing glue, and Joseph Palenapa, as well as prison records surrounding the disciplinary hearing. Defendant raises the following objections: non-serious conduct, lack of memory, inadmissible opinion, and hearsay. The Court has previously addressed these objections, and finds that the probative value of this information outweighs any undue prejudice. Any lack of memory can be addressed by having prison records read to the jury pursuant to Rule 803(5). The Court finds that information surrounding Defendant's glue-sniffing is necessary to explain the context for his threatening actions toward the superintendent at the hearing.

#### 8 3/10/71 inmate argument and verbal exchange with guard (2m,17; 2n,18).

■ The Court will permit the Government to introduce information concerning Defendant's verbal exchange with prison guard Joseph Spencer (Defendant climbed up wall to second level to fight with another inmate, taunted the guard who told him to get down by saying "I'm trying to escape, shoot me" and then jumping down and saying "you had your chance to shoot me but you are not fast enough.") The Government offers the testimony of Jo-

seph Spencer, as well as prison records. Defendant raises the following objections: non-serious conduct, lack of notice, inadmissible opinion, remoteness in time, and hearsay. The Court has previously addressed these issues. The Court finds that this information is relevant and is not unnecessarily cumulative of other information concerning Defendant's misbehavior. Although the Government only seeks to prove this incident with prison records, the Court finds that these records are sufficiently reliable because they demonstrate that they were made by a percipient witness who had a duty to report. In addition, the records indicate that an adjustment committee met to consider these charges and that they were sustained.

### 9 6/21/73 assault on prison guard and 6/26/73 charging at guard while handcuffed (2o,18; 2p,18; 2q,19).

 The Court will permit the Government to introduce evidence concerning Defendant's assault on a prison guard in the prison library, as well as his charging at the guard a few days later while handcuffed. The Government offers the testimony of guard William Graham (who was assaulted), as well as prison records. Defendant raises the following objections: non-serious conduct, remoteness in time, inadmissible opinion, witness cannot remember, hearsay, and no notice. These objections have been addressed previously by the Court, and the Court finds that the probative value of this information outweighs any undue prejudice. Moreover, the prison records are admissible because they were created by Mr. Graham and they corroborate his proffered testimony.

### 10 12/15/73 assault on guard Donald Stevens (2r,19; 2s,20).

 The Court will permit the Government to introduce information that Defendant slapped guard Donald Stevens. The Government intends to offer the testimony of Mr. Stevens, as well as prison records. Defendant raises the following objections:

non-serious conduct, remoteness in time, hearsay, and best evidence. The Court has previously rejected all of these arguments, except for the best evidence objection. However, this objection lacks merit and is rejected. The Court finds that the probative value of this information outweighs any undue prejudice.

### 11 1/1/74 involvement in prison riot (2t,20; 2u,21).

 The Court will permit the Government to introduce information surrounding Defendant's involvement in a prison riot and threats to a prison guard. The Government offers the testimony of the guard, Sadato Yoshimura, and prison records that corroborate Mr. Yoshimura's proffered testimony. Defendant raises the following objections: non-serious conduct, undue prejudice, and hearsay. The Court has rejected most of these arguments previously, and finds that the probative value of this incident outweighs any undue prejudice. The Court finds that both the testimony and the prison records are admissible. The prison records, although not prepared by Mr. Yoshimura, still corroborate his proffered testimony and thus bear sufficient indicia of reliability. Moreover, the records indicate that the Adjustment Committee took corrective action based upon this incident.

### 12 6/26/76 threat and rape of inmate (2v,21; 2w,21; 2x,21).

 The Court will permit the Government to introduce information that Defendant threatened and raped a fellow inmate. The Government offers the testimony of the inmate, Ralph Eddinger, and Thomas Lynch, a prison guard who investigated Eddinger's claims, and prison records. Defendant raises the following objections: remoteness in time, hearsay, inadmissible opinion. The Court has previously addressed these objections. The Court finds that the probative value of this testimony and prison records outweighs any undue

prejudice, and that they are therefore admissible.

**13 2/9/97 assault of inmate (2y,22).**

Withdrawn by the Government.

**14 2/2/78 fire in cell (2z,22; 2aa,23).**

 The Court will permit the Government to introduce information concerning Defendant role in starting a fire outside his cell. The Government offers the testimony of guard Marvin Berry, who observed Defendant starting the fire, as well as prison records that bear, in part, the signature of Mr. Berry. Defendant raises the following objections: remoteness in time, no personal knowledge, hearsay. The Court has previously rejected these arguments, and finds that the probative value of this information outweighs any undue prejudice. With regard to personal knowledge, the Court finds that Mr. Berry's testimony is reliable because he observed Defendant starting the fire.

**15 2/4/78 threat to guard while greased with butter (2bb,23; 2cc,23; 2dd,24; 2ee,24; 2ff,25; 2gg,25; 2hh,25).**

 The Court will permit the Government to introduce information surrounding Defendant's assault, while greased with butter, on a prison guard, including the fact that he allegedly threw urine and feces at the guard earlier in the day in order to provide the necessary context to explain his later actions. The Government offers the testimony of various prison guards, including Gunther McConnell, James Graham, William Garsow, Allie Hardeman, Jerry Schulz, Gerald Roberts, as well as prison records. Defendant raises the following objections: mere words, remoteness in time, cumulative, no notice of other incidents. The Court has rejected Defendant's mere words and remoteness objections, and finds that the probative value of this information outweighs any undue prejudice. However, the Court agrees with Defendant that the testimony of six prison guards concerning this one incident is cumulative and unnecessary. Therefore, the Court will limit the Government to introducing the testimony of, at most, two prison guards (in addition to the prison records).

**16 3/29/78 fire in prison (2ii,26).**

The Court will permit the Government to introduce information concerning Defendant's role in starting another fire in front of his cell. The Government offers prison records to prove this incident. Defendant raises the following objections: hearsay, remoteness in time. These arguments have been previously rejected. The Court finds that the prison records demonstrate that they were created by a percipient witness who had a duty to report such prisoner misbehavior.

**17 6/23/80 threat to staff member (2jj,26).**

The Court will permit the Government to introduce information surrounding Defendant's threat to a staff member. The Government offers prison records to prove this incident. Defendant raises the following objections: hearsay, remoteness in time, and mere words. These arguments have been previously rejected. The Court finds that these records bear sufficient indicia of reliability, particularly in light of the fact that they demonstrate that Defendant was brought before a discipline committee, advised of his right to remain silent, and include the written statements of both the percipient witness (staff member) and Defendant.

**18 1/15/85 assault of dental assistant (2kk,27).**

 The Court will not permit the Government to introduce information surrounding Defendant's assault of a dental assistant (asked for a kiss, slapped dental assistant's arm and called her a "fucker" when she refused). The Government offers prison records to prove this incident.

Defendant raises the following objections: hearsay, remoteness in time, and non-serious conduct. The Court finds that this information is not relevant. Moreover and in the alternative, the Court finds that the information is cumulative and a waste of time.

**19 *9/25/85 assault of inmate (2ll,27).***

■■■ The Court will permit the Government to introduce information that Defendant assaulted an inmate by hitting him in the side of the face and subsequently threatening the inmate if Defendant lost his job at Occupational Therapy. The Government offers prison records to prove this incident. Defendant raises the following objections: hearsay, remoteness in time, and non-serious conduct. These arguments have been previously rejected. The Court finds that this information is sufficiently reliable because the prison record indicates that it was based upon the officer's personal observations.

**20 *7/18/84 harassment of staff member (2mm,27).***

■■■ The Court will prohibit the Government from introducing information that Defendant harassed a staff member by offering $55 to let him hit her in the mouth. The Government offers prison records to prove this incident. Defendant raises the following objections: hearsay, non-serious conduct, and remoteness in time. The Court finds that this information is not relevant and that it is unnecessarily cumulative of other information concerning Defendant's misbehavior.

**21 *10/15/85 threat to guard (2nn,28).***

■■■ The Court will allow the Government to introduce information surrounding Defendant's threat to a prison guard (Defendant shook a fork in the face of prison guard). The Government offers prison records to prove this incident. Defendant raises the following objections: hearsay, remoteness in time, and non-serious conduct. The Court finds that this informa-

tion is relevant. In addition, the Court finds that the information is sufficiently reliable because it is based upon the recorded observations of a percipient witness who had a duty to report prisoner misbehavior.

**22 *11/12/85 threat to guard (2oo,28).***

■■■ The Court will permit the Government to introduce information surrounding Defendant's threat to a guard (threw cup at guard, which bounced and hit guard in the face; stated "You think that's assault? I'll show you assault mother fucker."). The Government offers prison records to prove this incident. Defendant raises the following objections: hearsay, remoteness in time, and non-serious conduct. These arguments have been previously rejected. The Court finds that this information is sufficiently reliable because the prison records contain the statement of a percipient witness who had a duty to report, as well as the findings and disposition of the disciplinary hearing officer.

**23 *3/23/86 threat to guard (2pp,29).***

■■■ The Court will permit the Government to introduce information surrounding Defendant's threat to a guard (Defendant allegedly charged at guard when she told him to wait). The Government offers prison records to prove this incident. Defendant raises the following objections: hearsay, remoteness in time, and non-serious conduct. These arguments have been previously addressed. The Court finds that this information is sufficiently reliable because it is based upon the personal observations of an officer who had a duty to report, and includes the findings of a disciplinary hearing officer.

**24 *1/21/88 threat to hang guard (2qq,29; 2rr,30).***

Withdrawn by the Government.

**25 *2/1/88 assault on inmate (2ss,30).***

Withdrawn by the Government.

**26** *12/22/98 biting of inmate and subsequent threats (2tt,31; 2uu,31).*

■ The Court will permit the Government to introduce information surrounding Defendant's biting of another inmate and subsequent threats towards the inmate and his family. The Government offers the testimony of the inmate, Harland Kamekona, as well as prison records to prove this incident. Defendant raises the following objections: hearsay and non-serious conduct. These arguments have been previously rejected, and the Court finds that the probative value of this information outweighs any unfair prejudice. The Court finds that this information is sufficiently relevant and reliable to be admissible during the penalty phase.

**27** *11/4/73 mainland transfer request (2vv,31).*

Withdrawn by the Government.

**28** *6/22/76, 3/6/78, and 3/23/78 prison memos (2ww,32; 2xx,32; 2yy,32).*

The Court will prohibit the Government from introducing this information because it is too general and does not contain the author's personal observations. Most of the incidents referred to in the memos appear to have been offered by the Government previously.

**29** *1988 heroin overdose (2zz,32).*

Withdrawn by the Government.

**30** *Summary of prison history (2aaa,33; 2bbb,34).*

The Government proffers summary witnesses to testify as to the chronology of Defendant's prison history (both Bureau of Prisons, and the Hawaii State Prison). Defendant raises the following objections: remoteness in time and hearsay (concerning the reasons for prison transfers). The Court will refrain from ruling on this issue at the present time, and encourages the parties to stipulate as to the dates that Defendant was in prison.

**31** *12/6/87 assault on police officer (add.2c,35).*

■ The Court will permit the Government to introduce information that Defendant threw a knife at a police officer when the officer tried to arrest him. The Government offers the testimony of the police officer, David Lam. Defendant raises the following objections: remoteness in time, relevance, and lack of notice. The Court has previously rejected the remoteness argument. The Court also rejects the relevance objection because, even though the incident occurred outside the prison context, it still supports an inference that Defendant poses a danger of physical harm. The Court finds that the probative value of this information outweighs any unfair prejudice.

**D. *ESCAPE ATTEMPTS.***

**1** *4/20/72 escape attempt (3a,36).*

■ The Court will prohibit the Government from introducing information that Defendant failed to return from a job-search furlough. The Government intends to rely upon prison records. Defendant raises the following objections: no notice, authentication, hearsay, and best evidence. The Court finds that this information is not relevant because Defendant simply walked away from a job-finding furlough, rather than attempting to escape from a prison facility.

**2** *11/20/72 escape attempt by cutting hole in fence (3b,37; 3c,38; 3d,38).*

■ The Court will permit the Government to introduce information that Defendant attempted to escape by cutting a hole in a prison-yard fence. The Government offers the testimony of guard Stephen Vasconcellos and guard Sadato Yoshimura, as well as prison records. Defendant raises the following objections: Defendant posed no danger, lack of reliability, hearsay, and authentication. The Court has previously rejected all of these objections, and finds

that the probative value of this information outweighs any unfair prejudice. The Court finds that the prison records are sufficiently reliable because some of them were created by Mr. Yoshimura or are otherwise based on the personal observations of officers with a duty to report prisoner misbehavior.

### 3 9/12/73 escape attempt (3e,39; 3f,39).

 The Court will permit the Government to introduce information that Defendant attempted to escape by cutting a hole in a ceiling and a tile wall. The Government offers prison records and a judgment of conviction. Defendant raises the following objections: Defendant posed no danger, hearsay, and lack of notice. The Court has previously rejected all of these objections, and finds that the probative value of this information outweighs any unfair prejudice.

### 4 9/13/74 escape attempt (3g,40; 3h,40; 3i,40).

 The Court will permit the Government to introduce information that Defendant attempted to escape by kicking out a window in a Bureau of Prisons bus while it was stopped for lunch at a truck stop. The Government offers the testimony of prison official Donald Kendall, prison records, and a judgment of conviction. Defendant raises the following objections: Defendant posed no danger, hearsay, lack of notice. The Court has previously rejected all of these objections, and finds that the probative value of this information outweighs

any unfair prejudice. The Court will admit all of this information.

### E. ADULT CRIMINAL CONVICTIONS.

### 1 5/24/68 burglary in 2nd degree (41).

The Court will refrain from ruling on the admissibility of this conviction at this time. Defendant argues that this conviction is not sufficiently serious to support the adult criminal convictions nonstatutory aggravating factor.[10] However, neither party has submitted any information from which the Court can derive the underlying factual circumstances. Therefore, the Court will withhold its ruling until it learns the facts underlying this conviction and can then determine whether Defendant's conduct was sufficiently serious as to warrant consideration by the jury.

### 2 10/12/72 robbery in 2nd degree—Kosnik incident (41).

The Court will admit this conviction in support of the nonstatutory aggravating factor adult criminal convictions.

### 3 12/29/82 kidnapping—Isa incident (41).

The Court will admit this conviction in support of the nonstatutory aggravating factor adult criminal convictions.

### 4 12/7/87 criminal contempt of court (42).

 The Court will prohibit the Government from introducing information

---

10. Defendant also cites to the recent decision in *United States v. Peoples*, 1999 WL 1044199 (W.D.Mo. Nov.8, 1999). The Court finds this decision unpersuasive and inapposite to the facts of the instant case. The Court concludes that the *Peoples* decision rests on the erroneous factual premise that jurors cannot discern that statutory aggravating factors are more important than nonstatutory aggravating factors. Here, the Court is convinced that the jury will understand this distinction. The Court contemplates that the penalty phase special verdict form will indicate, in accordance with 18 U.S.C. § 3592, that the jury "shall" consider the statutory aggravating factors, but "may" consider nonstatutory aggravating factors. Moreover, by only permitting the jury to consider statutory aggravating factors in making the initial gateway findings, the structure of the verdict form will demonstrate that these factors are more important than nonstatutory aggravating factors. Finally, the Court is not persuaded by *Peoples* because, in a somewhat confusing fashion, the decision both criticizes the *Davis* case and cites to it for support. For these and other reasons, the Court does not find the analysis in *Peoples* helpful.

that Defendant was convicted for criminal contempt of court on December 7, 1987. Defendant argues no notice. Without deciding that issue, the Court finds that this conviction is not serious enough to support the nonstatutory aggravating factor of adult criminal convictions.

**5 *1/5/88 criminal contempt of court (42).***

The Court will prohibit the Government from introducing information that Defendant was convicted for criminal contempt of court on January 5, 1988. The Court finds that this conviction is not serious enough to support the nonstatutory aggravating factor of adult criminal convictions.

**6 *10/4/88 possession of firearm and 3/17/89 robbery, burglary, and kidnapping (42).***

The Court will prohibit the Government from introducing information that Defendant was convicted of possession of a firearm on October 4, 1988 as a nonstatutory aggravating factor. As discussed in the Court's Order regarding the Government's motion to amend the death penalty notice, the Court finds that this information must be included in the § 3592(c)(2) statutory aggravating factor (the Smith incident) so that the collective course of criminal conduct will be considered together and any danger of double-counting will be avoided.

**7 *4/23/72 robbery in 2nd degree (42).***

Although listed in the Government's original death penalty notice, the Government has not proffered this conviction in its summary to Defendant. Defendant argues that the Government must have conceded that it could not establish this conviction. The Court will preclude this information because it appears to stem from the Isa incident and the Government has not proffered this incident in its letter or its motion to amend the death penalty notice.

**F. *WORKNET PROGRAM.***

Defendant objects to any reference to his conduct in the Worknet Program. In its August 17, 1999 Order, the Court originally ruled that the Government could rely on this information in support of the future dangerousness in prison nonstatutory aggravating factor. However, after carefully considering the information proffered by the Government in relation to the Worknet Program, the Court concludes that this information must be excluded. The Court finds that this information is not sufficiently relevant because it occurred outside the prison context and Defendant's actions were not sufficiently serious to justify admission. Moreover and in the alternative, the Court finds that this information is cumulative and a waste of time.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendant's various objections to the Government's proffered penalty phase evidence.

IT IS SO ORDERED.