**UNITED STATES of America,**
**Plaintiff,**

v.

**1. William CONCEPCION SABLAN**
**and 2. Rudy Cabrera Sablan,**
**Defendants.**

**Criminal No. 00–cr–00531–WYD.**

United States District Court,
D. Colorado.

July 6, 2006.

Brenda Kay Taylor, Philip A. Brimmer, U.S. Attorney's Office-Denver, Denver, CO, for Plaintiff.

Nathan Dale Chambers, Chambers Dansky & Mulvahill LLC, Patrick J. Burke, Patrick J. Burke, P.C., Susan Lynn Foreman, Susan L. Foreman, Attorney at Law, Forrest W. Lewis, Forrest W. Lewis, P.C., Denver, CO, Donald R. Knight, Knight & Moses, Littleton, CO, for Defendants.

## ORDER

WILEY Y. DANIEL, District Judge.

### I. INTRODUCTION

THIS MATTER comes before the Court on the Phase III motions filed by Defendants William Sablan and Rudy Sablan. These motions address evidentiary challenges to the Federal Death Penalty Act [hereinafter "FDPA"]. A hearing was held on these motions on Wednesday, May 17, 2006. This Order addresses the Court's rulings on the Phase III motions, and incorporates by reference rulings made at the hearing.

### II. ANALYSIS

**A. William Sablan's Motion To Strike The Nonstatutory Aggravating Factor Of Future Dangerousness On The Grounds Congress Did Not Intend It To Be Considered In Aggravation [Wm–DP 21] (docket # 1688)**

This motion seeks to strike the Government's nonstatutory aggravating factor of ["NOI"] on the basis that Congress did not intend it to be considered in aggravation. More specifically, Defendant William Sablan asserts that many state death-penalty sentencing schemes allow evidence that a defendant might be a danger in the future to be admitted in aggravation, and that Congress is presumed to know the state of the law when it enacts new legislation. The FDPA specified sixteen (16) aggravating factors for jury consideration in murder cases, which relate either to the circumstances of the murder or to the defendant's prior convictions for very serious or repetitive offenses. Defendant contends that since Congress did not include future dangerousness as an aggravating factor, it can reasonably be inferred that Congress did not intend its use under the FDPA.

This motion is denied. This is, to some extent, a rehash of arguments made in

prior Phase II motions (addressing legal challenges to the death penalty) and rejected by me in a previous Order. *See United States v. Sablan*, No. 00–CR–00531–WYD, 2006 WL 1028780 (D.Colo. April 18, 2006) (order denying Phase II motions at 41–46). In that Order, I rejected the argument that future dangerousness was not permissible for the jury to consider under the FDPA. *Id.* I also rejected the argument that allowing the jury to consider future dangerousness is contrary to congressional intent, and the statutory construction argument made by Defendant in connection with same. *Id.*

To the extent Defendant makes new arguments in support of this motion, I reject them. As stated previously, Defendant argues that because Congress knew of future dangerousness as a statutory aggravating factor pursuant to state schemes and did not include it as a statutory aggravating factor in the FDPA, it did not intend for this to be an aggravating factor. While this argument may have been plausible if Congress listed only statutory aggravating factors and did not provide for consideration of nonstatutory aggravating factors, that is not the case. Congress specifically authorized the use of other aggravating factors in addition to the statutory aggravating factors, stating that the Government may use "any other aggravating factor for which notice has been given." 18 U.S.C. § 3592(c). Thus, the plain language of the statute shows that Congress did not mean the aggravating factors to be limited to the statutory factors. Further, I believe that if Congress had meant for future dangerousness to be excluded, it would have limited the language of § 3592(c) to so state.

A number of courts have rejected the argument made by Defendant (or similar arguments), holding that the FDPA permits consideration of the future dangerousness aggravating factor. *See United States v. Glover*, 43 F.Supp.2d 1217, 1227 (D.Kan.1999) (rejecting argument that "'because Congress chose not to include such a 'future dangerousness' provision within the enumerated statutory aggravating factors, Congress intended that this general factor not be considered as a separate non-statutory aggravating factor'" since "Congress explicitly provided in the statute that, in addition to the statutorily-enumerated aggravating factors, 'the jury ... may consider whether *any other* aggravating factor ... exists'") (emphasis in original) (quotation omitted); *United States v. Frank*, 8 F.Supp.2d 253, 279 (S.D.N.Y.1998) (rejecting argument that Congress did not intend the aggravating factor that the defendant represents a continuing danger to be considered separately finding it "unpersuasive as a matter of statutory construction .... [i]f Congress had meant the statutory aggravating factors to provide an exhaustive list of factors that could be submitted with respect to the defendant's past criminal behavior and future propensities, it would have said so, and nowhere in the statutory language is such an exclusion even implied"); *see also United States v. Allen*, 247 F.3d 741, 788–89 (8th Cir.2001) ("given the broad language of the FDPA as to the allowance of nonstatutory aggravating factors, there is no reason under the FDPA why future dangerousness cannot be presented to the jury"), *vacated on other grounds*, 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002).

I find those cases persuasive and adopt their reasoning in the case at hand. William Sablan's Motion To Strike The Nonstatutory Aggravating Factor Of Future Dangerousness On The Grounds Congress Did Not Intend It To Be Considered In Aggravation [Wm–DP 21] is thus denied.[1]

---

**1.** I also find no support for Defendant's argument that the catch-all language in § 3592(c)

B. *William Sablan's Motion to Strike Future Dangerousness on the Grounds That Neither Experts Nor Lay Persons, Including Jurors, Are Capable of Reliably Predicting It [Wm DP–25] (docket # 1706) and Rudy Sablan's Motion To Preclude Expert Testimony On The Issue Of Future Dangerousness (R–50) (docket # 1698)*

These motions seek to strike future dangerousness as a nonstatutory aggravating factor on the grounds that jurors are incapable of reliably predicting it. The motions also seek to prohibit expert witnesses from offering opinions on future dangerousness because they also are incapable of predicting it. Defendants cite studies showing that this testimony is not reliable. Further, they argue that the seminal case on this issue, *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), should be reconsidered. The Supreme Court in *Barefoot* signaled that the evolution of events might cause it to revisit the issue of the reliability of expert testimony on future dangerousness, and Defendants argue that this is the time to do so.

Further, Defendants argue that *Barefoot* did not and could not have decided the admissibility of expert testimony on future dangerousness under federal evidentiary law, *i.e.,* whether expert testimony would be admissible under the FDPA. This is because the Supreme Court decided *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the seminal case on reliability of expert testimony, after *Barefoot.* Defendants contend that the *Daubert* analysis should result in exclusion of expert testimony on future dangerousness, since such testimony fails all five factors discussed in that case to assess reliability. Finally,

Defendants argue that the evidence should be excluded as more unfairly prejudicial than probative under 18 U.S.C. § 3593(c).

■ Turning to my analysis, I deny Defendants' motions to the extent they seek a per se rule that lay and expert testimony on future dangerousness is inadmissible. I find the Supreme Court's opinions in *Jurek v. Texas,* 428 U.S. 262, 274–75, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) and *Barefoot* controlling on these issues. In *Jurek,* the petitioner argued that "it is impossible to predict future behavior and that the question is so vague as to be meaningless." *Jurek,* 428 U.S. at 274, 96 S.Ct. 2950. The Supreme Court disagreed, stating that while future behavior is not easy to predict, this "does not meant that it cannot be made . . . . [i]ndeed, prediction of future behavior is an essential element in many of the decisions rendered throughout our criminal justice system." *Id.* at 274–75, 96 S.Ct. 2950. *Jurek* thus rejected a constitutional challenge to the Texas system which required the jury to determine whether there was " 'a probability that the defendant would commit criminal acts of violence that would constitute a threat to society' if he were not sentenced to death." *Id.* at 272, 276, 96 S.Ct. 2950 (quotation omitted).

*Barefoot* relied on *Jurek* in finding that expert testimony on the issue of future dangerousness was not per se inadmissible. It stated that "if it is not impossible for even a lay person sensibly" to determine the likelihood of a defendant committing further crimes and future dangerousness, "it makes little sense, if any, to submit that psychiatrists, out of the entire universe of persons who might have an opinion on the issue, would know so little about the subject that they should not be

can reasonably be interpreted as limited to the unique circumstances of a given case, which would be known only to the prosecu-

tion. I find no support for such a limitation in the language of 3592(c).

permitted to testify." *Barefoot,* 463 U.S. at 896–97, 103 S.Ct. 3383.

In *Barefoot,* the State of Texas called two psychiatrists who testified that the defendant would probably commit further acts of violence and represented a continuing threat to society. There were three issues before the Court: (1) whether psychiatrists "are incompetent to predict with an acceptable degree of reliability that a particular criminal will commit other crimes in the future and so represent a danger to the community", (2) whether psychiatrists should be barred from testifying about future dangerousness without having personally examined the defendant and in response to hypothetical questions, and (3) whether the psychiatric testimony was so unreliable under the particular circumstances of that case that it constituted reversible error. *Id.* at 896, 103 S.Ct. 3383. The Supreme Court rejected each of these arguments. *Id.*

As to the first issue, the Supreme Court stated, "[a]cceptance of petitioner's position that expert testimony about future dangerousness is far too unreliable to be admissible would immediately call into question those other contexts in which predictions of future behavior are constantly made." *Id.* at 898, 103 S.Ct. 3383. It further noted "the rules of evidence generally extant at the federal and state levels anticipate that relevant, unprivileged information should be admitted and its weight left to the fact finder, who would have the benefit of cross examination and contrary evidence by the opposing party." *Id.* "Psychiatric testimony predicting dangerousness may be countered not only as erroneous in a particular case but as generally so unreliable that it should be ignored." *Id.* "If the jury may make up its own mind about future dangerousness unaided by psychiatric testimony, jurors should not be barred from hearing the views of the State's psychiatrists along with opposing views of the defendant's doctors." *Id.* at 898–99, 103 S.Ct. 3383.

The Supreme Court in *Barefoot* also considered the same type of evidence presented by the Defendants in this case as to the unreliability of psychiatric testimony about future dangerousness. More specifically, it considered an amicus brief of the American Psychiatric Association indicating that psychiatrists are wrong most of the time and testimony that psychiatric predictions of future dangerousness were wrong two of three times. *Id.* at 901 and n. 7, 103 S.Ct. 3383. The Supreme Court found that this did not render the evidence unreliable. *Id.* at 901, 103 S.Ct. 3383. It stated on that issue, "[w]e are unconvinced, however, at least as of now, that the adversary process cannot be trusted to sort out the reliable from the unreliable evidence and opinion about future dangerousness, particularly when the convicted felon has the opportunity to present his own side of the case." *Id.* Defendants have not cited any evidence that is materially different than that considered in *Barefoot.*

Based on *Jurek* and *Barefoot,* the Supreme Court has indicated that both lay testimony and expert testimony are not per se inadmissible in a capital case. Further, Defendants have cited no authority to support their position that such testimony is inadmissible. The two cases cited by Defendants in connection with expert testimony are not controlling or even persuasive on this issue.

First, Defendants rely on *United States v. Sampson,* 335 F.Supp.2d 166 (D.Mass. 2004). There, the court noted that it may now be time for the Supreme Court to revisit *Jurek* and *Barefoot* in light of "[d]evelopments in the law and more recent scientific research." *Id.* at 218. According to *Sampson,* the law and research suggest "that expert testimony on future

dangerousness would be inadmissible under the Federal Rules of Evidence and is also too unreliable to be admitted in the penalty phase of a capital case under the balancing test established by 18 U.S.C. § 3593(a)." *Id.* The court further stated that it "would probably have excluded any expert evidence offered on future dangerousness because its probative value would have been outweighed by the danger of creating unfair prejudice." *Id.* at 220.

*Sampson* provides no basis to grant Defendants' motions. First, it specifically noted that this was an issue for the Supreme Court to revisit, since lower courts are bound by Supreme Court precedent " 'unless and until [the] Court reinterpret[s] the binding precedent.' " *Id.* at 218 (quoting *Agostini v. Felton,* 521 U.S. 203, 238, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)). I agree with *Sampson.* It is not the function of a district court to revisit an issue directly decided by the Supreme Court. That Court must decide if it wants to reconsider the issue. Second, the statement in *Sampson* that the court would probably exclude any expert testimony was dicta, as the court specifically noted that it was not actually required to decide whether expert testimony on future dangerousness was admissible in the case. *Id.* at 220.

Defendants also cite *Flores v. Johnson,* 210 F.3d 456, 462–70 (5th Cir.2000) (Garza, J. concurring). That case also does not provide a basis for granting Defendants' motions. *Flores* was a habeas case. It did not directly address the issue of whether expert testimony on future dangerousness is admissible at the penalty phase of a capital case. Instead, the majority opinion addressed and rejected petitioner's arguments that: (1) he did not receive effective assistance of counsel during the guilt and penalty phase of the trial, and (2) his conviction should be reversed for failure of the state to advise him of his right to inform Mexican consular officials of his arrest and detention and to be informed of his rights under the Vienna Convention on Consular Relations. *Id.* at 456–58.

Judge Garza wrote an opinion specially concurring. *Id.* at 458–70. In that opinion, Judge Garza stated that while he did not disagree with the majority opinion, he wrote "separately to raise questions about the authority on which the opinion is based, which appears inconsistent with itself and, possibly, with the dictates of the Constitution." *Id.* at 458. Specifically, he addressed the testimony of a psychiatrist that Flores would be a future danger. *Id.* That psychiatrist never examined Flores and did not make an evaluation based on psychological records of psychological testimony. *Id.* Instead, the psychiatrist "sat at trial, and based on the facts of the offense and Flores's conduct during the trial (Flores did not testify), Dr. Griffith came to an 'expert' opinion on Flores's future dangerousness." *Id.* Judge Garza expressed concerns about the reliability of such evidence, and noted, "it appears that the use of psychiatric testimony to predict a murderer's 'future dangerousness' fails" all five factors set out in *Daubert* to assist the court in determining reliability. *Id.* at 464–65 (citing *Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786). While I find Judge Garza's concurrence illuminating and well reasoned, he did not actually address the issue of *Daubert*'s applicability to expert testimony presented at the penalty phase of a capital case. Further, his concurring opinion provides no basis for me to ignore the binding precedent of *Barefoot* and *Jurek* and grant Defendants' motions.

Accordingly, I deny Defendants' motions to the extent they seek a per se rule that expert and/or lay testimony on the issue of future dangerousness is inadmissible at the penalty phase. However, I defer the motions to the extent they seek a ruling

that specific lay testimony or expert testimony to be presented in this case on future dangerousness is inadmissible. If the Government actually seeks to admit such evidence at trial, a later hearing will be held to determine whether the specific testimony sought to be offered is sufficiently reliable and relevant, and whether the probative value of such evidence is outweighed by the dangers of unfair prejudice, confusion of the issues or misleading the jury in accordance with 18 U.S.C. § 3593(c).

■ Finally, I address the applicability of *Daubert*. As Defendants note, *Daubert* was decided after *Barefoot* and the Supreme Court has not had an occasion to consider the applicability of *Daubert* to evidence offered in connection with an aggravating factor at the penalty phase. Indeed, there is a dearth of authority on this issue from any court. Judge Garza noted that several commentators have questioned the viability of the *Barefoot*'s majority analysis post-*Daubert*. *Id.* at 464 n. 11. He further noted that while the Federal Rules of Evidence generally do not apply at a sentencing hearing, even one in which death is a possibility, *Daubert*'s holding addressing "the cardinal concern of the rules of evidence—reliability ... is also the paramount concern in addressing the constitutionality of capital sentencing procedures." *Id.* n. 10. He found that "[t]his cannot be mere coincidence." *Id.* As stated previously, Judge Garza did not, however, actually address applicability of *Daubert* to the FDPA, and I have found no other guidance on this issue from any authority cited by the parties.

The Government contends that *Daubert* is not applicable to the penalty phase since it addressed the Federal Rules of Evidence and, specifically, Rule 702. I agree with the Government that *Daubert* does

not appear to be controlling at the penalty phase. The Supreme Court in *Daubert* granted certiorari "in light of sharp divisions among the courts regarding the proper standard for the admission of expert testimony." *Daubert,* 509 U.S. at 585, 113 S.Ct. 2786. The specific issue on appeal in *Daubert* was whether the test for determining admissibility of expert evidence based on a scientific technique, requiring that the evidence be "generally accepted" as reliable in the relevant scientific community (known as the *Frye* test and acknowledged by the Court to be the "dominant standard for determining the admissibility of novel scientific evidence at trial") was superseded by the adoption of the Federal Rules of Evidence. *Id.* at 585–589, 113 S.Ct. 2786.[2] *Daubert* held that the Federal Rules of Evidence and, specifically, Rule 702, did supplant the *Frye* rule and were controlling on the issue of the admissibility of expert scientific evidence. *Id.* at 588–89 and n. 6, 597, 113 S.Ct. 2786.

The Supreme Court in *Daubert* went on to determine the scope of Rule 702 and the requirements of same as to expert scientific testimony. *Id.* at 589–97, 113 S.Ct. 2786. It stated that "the overarching subject" of Rule 702 "is the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission." *Id.* at 594–95, 113 S.Ct. 2786. Thus, the trial judge is assigned the task under Rule 702 of ensuring that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597, 113 S.Ct. 2786. In making this determination, the Supreme Court cautioned the trial court to "be mindful of other applicable rules" of evidence, including Rules 702, 706 and 403. *Id.* at 595, 113 S.Ct. 2786. Thus, it is clear

---

**2.** The test was first stated in *Frye v. United States,* 54 App.D.C. 46, 47, 293 F. 1013, 1014 (1923).

from a review of *Daubert* that it focused on the Federal Rules of Evidence and the requirements of Rule 702.

The FDPA, however, specifically states that information in connection with an aggravating factor "is admissible [at the penalty phase] regardless of its admissibility under the rules governing admission of evidence at criminal trials...." 18 U.S.C. § 3593(c). Accordingly, I find that *Daubert*, to the extent it addresses the Federal Rules of Evidence and Rule 702, is not controlling at the penalty phase as to the admissibility of this evidence. The fact that *Daubert* is not controlling does not, however, mean that *Daubert* is irrelevant to the penalty phase. I leave to a later date a decision as to whether the framework *Daubert* set out for evaluating the reliability of evidence, including the five factors it found were relevant to the reliability determination, may be considered at the penalty phase in connection with a determination of the admissibility of expert testimony on future dangerousness, even if that framework is not controlling. This issue may be re-raised by Defendants at the penalty phase should the case proceed to that phase.

In conclusion, Defendants' motions to strike expert and/or lay testimony on the issue of future dangerousness are denied to the extent they seek a per se rule that this testimony is not admissible. The motions are deferred as to all remaining issues.

C. *William Sablan's Motion To Strike Non–Institutional Incidents From Nonstatutory Aggravating Factor Of Future Dangerousness* [Wm DP–17] (docket # 1684)

This motion seeks to strike the Government's allegations of prior criminal conduct relating to "Non–Institutional Settings" from its nonstatutory aggravating factor of future dangerousness. Defen-

dant asserts that in support of future dangerousness, the Government lists six criminal incidents in paragraphs (a)-(f) under its heading of "Non–Institutional Setting." These incidents involve conduct between 1984 and 1996 that prompted the filing of criminal charges in Saipan. Defendant asserts that these incidents must be stricken from the NOI because they are not adequately related to the issue of whether William Sablan will be a future danger to inmates and staff when in a prison setting, citing cases. Further, it is contended that the unfair prejudice of introducing this evidence outweighs its probative value.

I note that Rudy Sablan also seeks to strike the non-institutional incidents in the NOI. This request is made in his Motion in Limine Regarding Convictions and Incidents Alleged in Support of Non–Statutory Aggravating Factor of Future Dangerousness (R–53). Turning to my analysis, the Government agreed to withdraw all the non-institutional incidents in the NOI as to Rudy Sablan and certain of the non-institutional incidents. Indeed, such incidents have been withdrawn in the recently filed Second Amended NOI. Accordingly, Rudy Sablan's request in his Motion in Limine to have the non-institutional incidents withdrawn from the NOI is granted. All other arguments in his Motion in Limine are deferred. William Sablan's motion is also granted to the extent it seeks to strike any non-institutional incidents that were withdrawn by the Government in its Second Amended NOI.

██ I now turn to the non-institutional incidents relating to William Sablan that the Government has not agreed to withdraw. I grant William Sablan's motion to the extent it seeks a ruling that future dangerousness must be evaluated in the context of life in a prison setting. The Government conceded that this is appropriate at the hearing, and I find it is the proper standard since it appears to be

undisputed that Defendants are not eligible for parole and/or supervised release. In adopting this standard, I rely on *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). While *Simmons* did not directly address the issue, it indicated that the issue of future dangerousness needs to take into account the fact that a defendant is not eligible for parole. It stated on that issue:

> In assessing future dangerousness, the actual duration of the defendant's prison sentence is indisputably relevant. Holding all other factors constant, it is entirely reasonable for a sentencing jury to view a defendant who is eligible for parole as a greater threat to society than a defendant who is not. Indeed, there may be no greater assurance of a defendant's future nondangerousness to the public than the fact that he will never be released on parole. The trial court's refusal to apprise the jury of information so crucial to its sentencing determination, particularly when the prosecution alluded to the defendant's future dangerousness in its argument to the jury, cannot be reconciled with our well-established precedents involving the Due Process Clause.

*Id.* at 163–64, 114 S.Ct. 2187.

Cases interpreting *Simmons* and/or the issue raised by Defendant William Sablan in his motion have held that evidence of future dangerousness must be limited to the prison context when the defendant is not eligible for parole. *United States v. Rodriguez*, No. CRIM. 2:04–CR–55, 2006 WL 487117, at *5 (D.N.D.2006) ("[r]elying on *Simmons*, district courts appear to have routinely held that the government is limited to presenting evidence on future dangerousness in the context of life imprisonment") (citing cases); *United States v. Llera Plaza*, 179 F.Supp.2d 464, 487–88 (E.D.Pa.2001) (agreeing with courts that "have taken the Supreme Court's discussion in *Simmons* to mean that, in the

FDPA context, government arguments regarding 'future dangerousness' should be limited to the dangers posed by the defendants while serving a life sentence in prison" and limiting the government's evidence "to that which is relevant to a context of life imprisonment"); *United States v. Cooper*, 91 F.Supp.2d 90, 112 (D.D.C.2000) (evidence of future dangerousness would be permitted "only as it pertains to any threat Cooper may present if he is sentenced to life imprisonment without the possibility of release"); *United States v. Peoples*, 74 F.Supp.2d 930, 931 (W.D.Mo. 1999) ("'future dangerousness' is to be confined to analysis of past activities and propensities for danger to inmates and prison staff . . . ."); *see also United States v. Gilbert*, 120 F.Supp.2d 147, 154 (D.Mass. 2000); *United States v. Glover*, 43 F.Supp.2d 1217, 1227 n. 6 (D.Kan.1999). I find these cases persuasive and rely on them in finding that the Government must be required to evaluate future dangerousness in the context of life in a prison setting.

As to the specific non-institutional incidents that William Sablan seeks to strike, this portion of the motion is denied without prejudice. I will need to evaluate each incident alleged in the Second Amended NOI to determine whether it is relevant to the issue of future dangerousness in the context of life in prison, whether it is sufficiently reliable, and whether the requirements of 18 U.S.C. § 3593(c) are met, *i.e.*, that the probative value of this evidence is not outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. A week-long hearing has been set commencing August 28, 2006, to address the reliability of the particular incidents at issue.

In conclusion, William Sablan's Motion To Strike Non–Institutional Incidents From Nonstatutory Aggravating Factor Of Future Dangerousness [Wm DP–17]

(docket # 1684) is granted in part and denied without prejudice in part consistent with this Order.

### D. *William Sablan's Motion to Strike Threatening Violence, Low Rehabilitative Potential, and Lack of Remorse From The Government's Notice Of Intent To Seek The Death Penalty* [Wm DP–22] (docket # 1689)

This motion seeks to strike the allegations of threatening others with violence, lack of remorse and low rehabilitative potential from the Government's NOI. The Government indicated in response to the motion that it does not seek to introduce threats of violence, lack of remorse or low rehabilitative potential as separate non-statutory aggravating factors but in support of future dangerousness. Further, the Government has stated that it will not give the NOI to the jury, and this was made an Order of the Court on April 13, 2006. Accordingly, Defendant's motion is denied as moot as to those arguments.

The remainder of the motion is denied without prejudice. As to the admissibility of specific evidence, this is deferred until the hearing set to commerce August 28, 2006. I do note, however, that courts have held lack of remorse can be considered in connection with future dangerousness and is not improper on a per se basis. *United States v. O'Driscoll*, 203 F.Supp.2d 334, 345 (M.D.Pa.2002); *United States. v. Cooper*, 91 F.Supp.2d 90, 112 (D.D.C.2000); *United States v. Nguyen*, 928 F.Supp. 1525, 1541 (D.Kan.1996); *United States v. Davis*, 912 F.Supp. 938, 946 (E.D.La.1996); *see also United States v. Davis*, No. CR.A. 01–282, 2003 WL 1873088, at *9 (E.D.La. 2003); *United States v. Bin Laden*, 126 F.Supp.2d 290, 303–04 (S.D.N.Y.2000).

It has also been held that low rehabilitative potential is relevant to the issue of future dangerousness. *Nguyen*, 928

F.Supp. at 1544; *Davis*, 912 F.Supp. at 946; *see also United States v. Mayhew*, 380 F.Supp.2d 936, 950–51 (S.D.Ohio 2005); *United States v. Taylor*, 316 F.Supp.2d 730, 742–43 (N.D.Ind.2004). There is conflicting authority as to the admissibility of threats of violence without criminal conduct. I do not believe that threats should be excluded on a per se basis. Instead, I will decide the admissibility of the specific threats at issue at the August hearing when I hear them in context.

Finally, I note that the motion requests that modifications be made to the special verdict form to be given to the jury at the conclusion of the penalty phase. This portion of the motion also is denied without prejudice. That request needs to be raised at the time any such jury instructions are under consideration by the Court.

In conclusion, William Sablan's Motion to Strike Threatening Violence, Low Rehabilitative Potential, and Lack of Remorse From The Government's Notice Of Intent To Seek The Death Penalty [Wm DP–22] is denied as moot in part and denied without prejudice in part consistent with this Order.

### E. *Rudy Sablan's Motion in Limine Regarding the "Heinous or Depraved" Statutory Aggravating Factor* [R–52] (docket # 1700)

This motion seeks to strike the "heinous or depraved" statutory aggravating factor. Rudy Sablan argues that in order for this aggravating factor to be given, the Government must show that he committed the serious physical abuse and that he specifically intended the abuse apart from the killing. Thus, it is contended that unless the Government is prepared to show, beyond a reasonable doubt, that Defendant intentionally committed serious physical abuse, *i.e.,* he cut open the victim's abdomen, the evidence of Defendant's actions in the aftermath are not relevant and reliable

and would cause unfair prejudice to him. Defendant also requests that the Government make a detailed proffer on this issue. If the Government is not able to provide evidence as to what Rudy Sablan did to justify this aggravator, the Court should exclude evidence that the victim's abdomen was cut open and organs removed pursuant to 18 U.S.C. § 3593(c) and the Eighth Amendment.

Turning to my analysis, the Fifth Circuit approved an instruction stating, "[t]o establish that the defendant killed the victim in an especially heinous, cruel, or depraved manner, the government must prove that the killing involved either torture or serious physical abuse to the victim." *United States v. Hall*, 152 F.3d 381, 414 (5th Cir.1998). *Hall* also indicated that the terms " 'heinous, cruel, or depraved' are stated in the disjunctive: any of them individually may constitute an aggravating circumstance warranting imposition of the death penalty." *Id.* "Depraved" was defined to mean "that the defendant relished the killing or showed indifference to the suffering of the victim, as evidenced by torture or serious physical abuse of the victim." *Id.* Finally, the instruction approved in *Hall* stated that "in order for a killing to be especially heinous, cruel, or depraved on the basis of an infliction of physical abuse, 'the defendant must have specifically intended the abuse *apart from* the killing.' " *Id.* at 415 (emphasis in original).

The Tenth Circuit rejected challenges (nonconstitutional in nature) to instructions "nearly identical" to those in *Hall*. *United States v. Chanthadara*, 230 F.3d 1237, 1261–62 (10th Cir.2000), *cert. denied*, 534 U.S. 992, 122 S.Ct. 457, 151 L.Ed.2d 376 (2001). The Tenth Circuit also held that serious physical abuse (unlike torture) may be inflicted either before or after death and does not require that the victim be conscious of the abuse at the time it

was inflicted. *Id.; see also Richmond v. Lewis*, 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992); *United States v. Jones*, 132 F.3d 232, 250 (5th Cir.1998).

In the case at hand, the Government asserts that there is evidence that Rudy Sablan strangled the victim (which did not appear to cause the death), mutilated the body at the time of death or shortly thereafter, and thereafter celebrated the death. The Government asserts that this evidence, if presented at trial, could prove that Defendant acted in a depraved manner and that he caused serious physical abuse to the body. I deny Rudy Sablan's motion without prejudice. I find that I must hear the evidence in context to determine if this aggravating factor is proper as to Rudy Sablan. In other words, I am not prepared as a matter of law to rule at this time that there is no evidence that could support this aggravating factor.

 However, I agree with Defendant that the fact he can be sentenced to death based on complicity principles, *see Tison v. Arizona*, 481 U.S. 137, 158, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), is not relevant to whether this aggravating factor is appropriate as to him. The two are separate issues. Regardless of whether Defendant can be found guilty under a complicity theory, the heinous or depraved aggravating factor cannot be presented as to Rudy Sablan unless the evidence shows it is appropriate as to him.

F. *William Sablan's Motion To Limit Evidence Of Prior Convictions To The Fact Of Conviction And To Exclude Evidence Of Underlying Conduct* [Wm DP–19] (docket # 1686) and *Rudy Sablan's Motion to Limit Evidence of Prior Convictions to Statutory Requirements* (R–55) (docket # 1703)

 These motions seek to limit evidence of the prior convictions being used

by the Government to support statutory aggravating factors pursuant to 18 U.S.C. § 3592(c)(2) and (4) to proof of the fact of conviction only.[3] According to Defendants, limiting the evidence to the fact of conviction means that the evidence must be limited to a redacted charging document, the judgment and commitment order, the statutory definition of the offense of conviction, the possible penalty, and/or the date of the offense and date of conviction.

Thus, Defendants argue that the Government should not be allowed to introduce evidence of the underlying facts regarding the conviction, as it does in the NOI. Defendants rely on *Taylor v. United States*, 495 U.S. 575, 599, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), which applied a categorical approach to the Armed Career Criminal Act ["ACCA"], 18 U.S.C. § 924(e)(1). Defendants also assert, among other arguments, that the heightened reliability required in an capital case supports the exclusion of evidence of the underlying facts.

Turning to my analysis, I deny both motions as to the legal argument that the underlying convictions should be limited to the fact of conviction. I first address *Taylor* and its applicability to the FDPA. As Defendants recognize, the Supreme Court in *Taylor* held that the enhancement provision of § 924(e) of the ACCA requires a "categorical approach to the designation of predicate offenses." *Id.* at 588, 110 S.Ct. 2143. *Taylor* explained that "Congress intended that the enhancement provision be triggered by crimes having certain specified elements, not by crimes that happened to be labeled 'robbery' or 'burglary' by the laws of the State of conviction." *Id.* at 588–89, 110 S.Ct. 2143. The Court noted that "[e]ach of the proposed versions of the 1986 amendment carried forward this categorical approach, extending the range of predicate offenses to all crimes having certain common characteristics—the use or threatened use of force, or the risk that force would be used—regardless of how they were labeled by state law." *Id.* at 589, 110 S.Ct. 2143.

*Taylor* then answered a more general issue—"whether the sentencing court in applying § 924(e) must look only to the statutory definitions of the prior offenses, or whether the court may consider other evidence concerning the defendant's prior crimes." *Id.* at 600, 110 S.Ct. 2143. It found that "the only plausible interpretation of § 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602, 110 S.Ct. 2143. In reaching this conclusion, the Supreme Court first found that "the language of § 924(e) generally sup-

---

**3.** As to William Sablan, the Government seeks to in introduce the underlying facts regarding three felonies to support the statutory aggravating factor under § 3592(c)(2) (that "... the defendant has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted use of a firearm ... against another person"). These felonies, to which William Sablan pled guilty, are violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm), § 924(h) (transfer of a firearm knowing that it would be used to commit a crime of violence) and § 1203 (hostage taking). As to Rudy Sablan, the Government seeks to admit the underlying facts regarding two felonies to support the statutory aggravating factor under § 3593(c)(4) (that "[t]he defendant has previously been convicted of two or more Federal or State offenses, punishable a term of imprisonment of more than 1 year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person"). Those two felonies, to which Defendant pled guilty, were aggravated assault and assault with a deadly weapon in violation of 18 U.S.C. §§ 7 and 113(a)(3).

ports the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Id.* at 600, 110 S.Ct. 2143.[4] Second, the Court noted that "the legislative history of the enhancement statute shows that Congress generally took a categorical approach to predicate offenses." *Id.* at 601, 110 S.Ct. 2143. "Third, the practical difficulties and potential unfairness of a factual approach are daunting." *Id.*

Turning to the FDPA, the Fourth Circuit considered and rejected the argument made by Defendants in their motion, *i.e.,* that *Taylor* requires that § 3592(c) be interpreted to require a categorical approach requiring only that the fact of conviction and the statutory definition of the crime of conviction be admitted. *United States v. Higgs,* 353 F.3d 281, 316 (4th Cir.2003). It held on that issue as follows:

> Higgs correctly points out that the Supreme Court has called for such a categorical approach when Congress has specified that a predicate offense have certain elements. See, e.g., *Taylor,* 495 U.S. at 588, 110 S.Ct. 2143.... However, this same approach is not required under § 3592(c)(2) of the federal death penalty scheme.... Because the language [of § 3592(c)(2) ] quite plainly requires only that the previous conviction 'involv[e] the use or attempted or threatened use of a firearm,' it authorizes and likely requires the court to look past the elements of the offense to the offense conduct.... Additionally, whereas the

court in Taylor noted that the categorical approach was proper to avoid 'the practical difficulties and potential unfairness of a factual approach,' *Taylor,* 495 U.S. at 601, 110 S.Ct. 2143, ... the Court has made it clear that an individualized determination *is* required in the death penalty context....

*Id.*

Other district courts have also rejected the categorical approach of *Taylor* in connection with the statutory aggravating factors and the death penalty scheme. *See United States v. Rodriguez,* No. CRIM. 2:04–CR–55, 2006 WL 487117, at *2–3 (D.N.D. Feb.28, 2006); *United States v. Chong,* 98 F.Supp.2d 1110, 1120–21 (D.Hawai'i 1999). *Rodriguez* rejected the categorical approach on the basis of the difference in language between the ACCA and the FDPA. It stated, "[g]iven the different in language between the [ACCA] and the FDPA, a court is not looking at whether the elements of a crime have the 'potential' for serious bodily injury, instead the court must look at what actually happened." *Rodriguez,* 2006 WL 487117, at *2. *Chong* found that *Taylor* and other decisions applying the categorical approach to the career offender provision of the guidelines were inapposite because "they do not arise in the capital context, do not take into account the language of the Federal Death Penalty Act providing for the introduction of 'any' relevant information in support of aggravating factors, and do not consider the Supreme Court's mandate to particularize capital sentencing proceedings." *Chong,* 98 F.Supp.2d at 1121.

4. *Taylor* referenced § 924(e)(1), which refers to "'a person who ... has three previous convictions' for—not a person who has committed—three violent felonies or drug convictions." *Id.* at 600, 110 S.Ct. 2143. "Section 924(e)(2)(B)(I) defines 'violent felony' as any crime punishable by imprisonment for more than a year that 'has as an element'—not any

crime that, in a particular case, involves—the use or threat of force." *Id. Taylor* held that "[r]ead in this context, the phrase 'is burglary' in § 924(e)(2)(B)(ii) most likely refers to the elements of the statute of conviction, not to the facts of each defendant's conduct." *Id.* at 600–01, 110 S.Ct. 2143.

. I do not agree with the portion of those cases relying on the differences in the language of the FDPA and the ACCA. In other words, I reject an argument that the difference in the language of the two statutes, standing alone, allows me to reject the categorical approach. It is true that *Taylor* referred to language in the ACCA that is different than the FDPA. It looked at a definition of the term "violent felony" that includes an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another robbery" which is different than the language of § 3592(c) that looks to whether the underlying offense "involved" certain conduct. This is the distinction that *Higgs* relied on. However, other definitions of predicate offenses in the ACCA specifically look at whether the underlying offense "involves" certain conduct, the same or similar language used in the FDPA. *See* 18 U.S.C. § 924(e)(2)(A)(ii) and (B)(ii). Further, the Supreme Court in *Taylor* made clear that the ACCA in its entirety showed that Congress intended a categorical approach (not just the language referring to a violent felony having as an "element" the use of physical force). *See Taylor*, 495 U.S. at 602, 110 S.Ct. 2143.

Nonetheless, I still find that Defendants' motions asking the Court to take a categorical approach to § 3592(c) must be denied. First, the Supreme Court in *Taylor* specifically noted as a reason to adopt the categorical approach that the legislative history of the ACCA shows that Congress "took a categorical approach to predicate offenses." *See Taylor*, 495 U.S. at 601, 110 S.Ct. 2143. Defendants have not shown through citation of legislative history that Congress intended the same result in connection with the FDPA. Indeed, that would be nonsensical in light of the fact that a capital case differs from a normal criminal case because of the need for more individualized sentencing, requiring that the jury "have before it all possible rele-vant information about the individual defendant whose fate it must determine." *Jurek v. Texas*, 428 U.S. 262, 275, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Gregg v. Georgia*, 428 U.S. 153, 204, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). *Higgs* and the other cases cited above correctly point this out.

Second, I agree with the Government that courts generally hold that unadjudicated criminal conduct is admissible in connection with future dangerousness. *See* Section II.G., *infra*, denying William Sablan's Motion to Prohibit the Government From Introducing Evidence of Unadjudicated Conduct. It is illogical that courts would allow evidence of unadjudicated criminal conduct, which necessarily requires introduction of the facts (since there is no conviction), and not allow in the facts in connection with an actual conviction. The actual conviction, even if not from federal or state courts in this country, is at least arguably more reliable than unadjudicated conduct.

Accordingly, I deny Defendants' motions to the extent they ask me to adopt a categorical approach and limit the statutory aggravating factors at issue to the fact of conviction. I also reject William Sablan's related argument that to the extent the Government seeks to introduce evidence of prior adjudicated criminal conduct in connection with future dangerousness, it similarly should be limited to proving the fact of conviction.

Finally, I deny the motions without prejudice as to the evidentiary issues, *i.e.*, to the extent they request that I determine whether the probative value of the convictions is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury pursuant to 18 U.S.C. § 3593(c). Those issues will be addressed at the August 2006 hearing, as will William Sablan's argument that admission of the

underlying facts as to convictions entered as the result of a plea agreement is unfair because it denies a defendant the benefit of his bargain. This needs to be addressed in context in connection with the actual conviction being considered.

As to Rudy Sablan's argument that allowing in the facts of conviction will result in mini-trials, I do not believe this is necessarily true. Certainly, it will be more time consuming in the penalty phase to admit the underlying facts, but the Supreme Court has held that the jury should have before it all possible information. I do not believe that this should result in a mini-trial as to each issue. Further, I agree with the court's holding on this issue in *United States v. Beckford,* 964 F.Supp. 993 (E.D.Va.1997), wherein it stated:

> the apprehension of numerous mini-trials respecting the existence of unadjudicated conduct supplies an insufficient basis to wholly exclude such conduct in capital sentencing proceedings. Courts regularly resolve difficult and close questions about the admissibility of evidence and the offering of proofs. The procedures and trial management techniques by which this is usually accomplished will apply even though the proceeding involves capital punishment.

*Id.* at 998.

Finally, should I decide that the Government is allowed to present the underlying facts as to specific convictions addressed at the August hearing, I may require the Government thereafter to submit a detailed proffer as to what facts it seeks to admit about each of the underlying convictions so that I can determine whether any specific facts should be excluded. I also note that in making the determination under § 3593(c) at the August hearing, I agree with the holdings in *Chong* and *Rodriguez* that the parties should be precluded from relitigating the merits underlying the convictions. *See Rodriguez,* 2006 WL 487117, at *2; *Chong,* 98 F.Supp.2d at 1121.

G. *William Sablan's Motion To Prohibit The Government From Introducing Unadjudicated Criminal Conduct During the Penalty Phase* [Wm DP–24] (docket # 1707)

■ This motion seeks to prohibit the Government from introducing evidence of unadjudicated criminal conduct, *i.e.,* criminal conduct that has not been adjudicated in a court of law. Defendant argues that the Supreme Court has not resolved the question of whether unadjudicated criminal conduct can be introduced in the penalty phase, despite the fact that the states are split on the issue. Defendant urges the Court to exclude such evidence under the Fifth, Sixth and Eighth Amendments. It is argued, among other things, that admission of this evidence cannot satisfy the heightened reliability standard in a capital case, that the underlying facts as to such evidence need to be excluded under the categorical approach, and that guarantees of reliability from the federal rules of evidence are eroded at the penalty phase of a capital case by the FDPA.

I deny this motion to the extent it seeks a per se ruling that unadjudicated criminal conduct should be excluded from the penalty phase. As recognized by defense counsel at the hearing on this motion, I previously ruled to some extent on this issue, rejecting Defendant Rudy Sablan's argument that only criminal conduct that has resulted in a conviction for one of the crimes listed in § 3592(c) may be introduced in the penalty phase. *United States v. Sablan,* No. 00–CR–00531, 2006 WL 1028780 (D. Colo. April 18, 2006) (order on Phase II motions, at 20). I further noted in that Order that the Tenth Circuit previously held that "admission of evidence of unadjudicated offenses at a sentencing

proceeding does not violate due process." *Id.* (citing *Boltz v. Mullin,* 415 F.3d 1215, 1231 (10th Cir.2005)).

I now reject Defendant's additional arguments on this issue and decline to adopt a per se rule of exclusion of such evidence. The Tenth Circuit has upheld the use of such conduct from a due process challenge. *Hatch v. State,* 58 F.3d 1447, 1465–67 (10th Cir.1995), *cert. denied,* 517 U.S. 1235, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996); *see also Boltz v. Mullin,* 415 F.3d 1215, 1231 (10th Cir.2005) (stating that the Supreme Court has never indicated "that only those unadjudicated offenses which are supported by sufficiently reliable evidence may be introduced in the sentencing phase of a capital case"), *cert. denied,* 547 U.S. 1046, 126 S.Ct. 1631, 164 L.Ed.2d 344 (2006); *Hawkins v. Mullin,* 291 F.3d 658, 678 (10th Cir.2002), *cert. denied,* 537 U.S. 1173, 123 S.Ct. 1012, 154 L.Ed.2d 916 (2003).

While I agree with Defendant that those cases are not dispositive on the issues raised by him because they are habeas cases with a different legal standard [5], they still lend support to the fact that the Tenth Circuit would not exclude this evidence under the Fifth Amendment or Due Process Clause. However, none of these cases actually addressed the Eighth Amendment. While *Hawkins* referenced that the defendant objected to evidence of unadjudicated crimes on the basis of both the Eighth and Fourteenth Amendments, the Eighth Amendment and the reliability issues raised by that Amendment were not specifically addressed. *Hawkins,* 291 F.3d at 677–78.

Nonetheless, the overwhelming weight of authority from other courts supports my finding that exclusion of such evidence on a per se basis is improper in a capital case.

*See United States v. Lee,* 274 F.3d 485, 494 (8th Cir.2001) ("[a]lthough determining whether there is a threat of unfair prejudice is a fact specific inquiry ... the admission of evidence of unadjudicated prior offenses at a capital sentencing hearing is constitutionally permissible and not inherently prejudicial"); *United States v. Taylor,* 316 F.Supp.2d 730, 741–42 (N.D.Ind. 2004) (denying a per se request to bar unadjudicated conduct as an aggravating factor, holding that a hearing would be held to determine the reliability of such information and whether it meets the requirements of § 3593(c)); *United States v. Gilbert,* 120 F.Supp.2d 147, 151–52 (D.Mass.2000) ("the overwhelming majority of federal courts has held that neither the Eighth Amendment nor the due process clause impose a *per se* barrier to the use of unadjudicated criminal conduct in capital sentencing") (collecting cases); *see also United States v. Cooper,* 91 F.Supp.2d 90, 106–07 (D.D.C.2000); *United States v. Beckford,* 964 F.Supp. 993, 997–99 (E.D.Va.1997); *United States v. Walker,* 910 F.Supp. 837, 854 (N.D.N.Y.1995).

The court in *United States v. Davis,* 912 F.Supp. 938, 945 (E.D.La.1996), summarized the compelling reasons for exclusion of such conduct but still held that a *per se* ruling excluding such conduct was improper. Specifically, it stated that the reasons for exclusion of unadjudicated criminal conduct include the fact "that a person is presumed innocent until proven guilty through reliable procedures", that it would be hard for a jury "that has just convicted the defendant of first degree murder" to give this information "the sort of dispassionate consideration necessary for a reliable finding of guilt, regardless of how

---

**5.** As stated in *Hawkins,* a defendant in a habeas case is required to show that the state court decision was contrary to clearly estab- lished Supreme Court precedent or otherwise unreasonable. *Hawkins,* 291 F.3d at 678.

they might be instructed", and that the introduction of such evidence would entail a full adversarial hearing. *Id.* at 948–49. However, it held that allowing such evidence to be introduced "is a policy choice, the wisdom of which this court cannot question." *Id.* at 949. It further stated that it was "persuaded that Congress did not intend a *per se* rule excluding such information; had they so intended, they would have said so, and nowhere in the statutory language is such an exclusion even implied." *Id.* Finally, *Davis* stated that "the admission of unadjudicated criminal conduct in the penalty phase is constitutional under current caselaw, assuming safeguards are in place to insure the necessary heightened reliability and offset the risk of undue prejudice, confusion of the issues and/or misleading of the jury." *Id.* I agree with the reasoning in *Davis*.

I also agree with the court's conclusion in *Gilbert* that "even if this court were not bound by precedent, defendant's arguments against admission [of such evidence] are outweighed by the simple fact that evidence of other acts of violence by a defendant 'is arguably more relevant and probative than any other type of aggravating evidence supporting imposition of the death penalty.'" *Id.* at 152 (quoting *Davis*, 912 F.Supp. at 948). *Gilbert* further stated, "[f]or the court to impose a *per se* ban on such evidence would give juries a far more positive view of many capital defendants than is true and accurate." *Id.* "This would detract from the reliability of capital sentencing, because the more information jurors have about

offenders, the more reliable and predictable their determinations will be." *Id.*

I also note that *Gilbert* rejected the argument made by Defendant regarding congressional intent. It stated on that issue:

> Congress did not intend, in delineating statutory aggravating factors, to forbid the introduction of other crimes as non-statutory aggravating factors. As Judge Berrigan explained in *Davis*, requiring a finding of at least one specific statutory aggravating factor serves a gate-keeping function, limiting the type of murderers who will be exposed to the death penalty in the first place. *See Davis*, 912 F.Supp. at 948, n. 25. Congress could rationally conclude that once the Government has passed this statutory threshold, other relevant and reliably-proven criminal acts, even if uncharged, might also be offered as aggravating factors supporting a death sentence. . . . . . .

*Id.* I adopt the reasoning of the above cases in rejecting Defendant's request for a *per se* ban on unadjudicated criminal conduct.[6]

Finally, however, I deny the motion without prejudice to the extent it argues that the specific unadjudicated criminal conduct is not sufficiently relevant and reliable and that it should be excluded under 18 U.S.C. § 3593. That issue will be addressed at the August 28, 2006 hearing. As one court stated, "a recognition that evidence of uncharged criminal conduct *may* be offered does not mean that *any*

---

**6.** I also reject at this time the argument that this evidence will require mini-trials, adopting the analysis in *United States v. Beckford,* 964 F.Supp. 993, 998 (E.D.Va.1997) ("the apprehension of numerous mini-trials respecting the existence of unadjudicated conduct sup-

plies an insufficient basis to wholly exclude such conduct in capital sentencing proceedings"). Finally, I reject Defendant's argument that a categorical approach should apply for the same reasons stated in Section II.F., *supra.*

criminal act may be considered by the jury as an aggravated factor." *Gilbert,* 120 F.Supp.2d at 152.

H. *William Sablan's Motion to Strike Institutional Setting Incidents from Future Dangerousness on the Grounds that the Conduct Alleged Is Not Criminal Conduct* [Wm DP–18] (docket # 1685)

■ This motion seeks to strike all unadjudicated incidents in the institutional setting from the NOI because they do not constitute criminal conduct.[7] For the same reasons stated above in connection with William Sablan's Motion To Prohibit The Government From Introducing Unadjudicated Criminal Conduct During the Penalty Phase [Wm DP–24], the motion is denied to the extent it seeks a per se rule that such incidents are inadmissible. To the extent Defendant argues that such incidents should be excluded because the future dangerousness aggravating factor for which such incidents are relevant is based on criminal conduct, I find that also does not require a per se exclusion of such evidence. I am not prepared to say as a matter of law that the fact that Defendant engaged in certain unadjudicated incidents in the institutional setting is not relevant to future dangerousness.

Finally, the motion is denied without prejudice to the extent that Defendant seeks a ruling as to the admissibility of the specific incidents. I need to make an individualized determination as to the admissibility of each incident at the evidentiary hearing in August.

I. *William Sablan's Motion to Strike Incidents Listed in Support of the Government's Nonstatutory Aggravating Factor "Future Dangerousness" on the Grounds They Are Insufficiently Relevant and Reliable* [Wm DP–16] (docket # 1683) and *Rudy Sablan's Motion in Limine Regarding Convictions and Incidents Alleged in Support of Non–Statutory Aggravating Factor of Future Dangerousness* [R–53] (docket # 1701)

As stated in Section II.C., *supra,* Rudy Sablan's request in his motion to have the non-institutional incidents withdrawn from the NOI is granted. The remainder of Rudy Sablan's motion and William Sablan's motion are deferred until the August 2006 hearing.

J. *William Sablan's Motion To Prohibit The Use of Prior Convictions Obtained In The Local Courts Of The Commonwealth Of The Northern Mariana Islands On The Grounds That The Federal Death Penalty Act Neither Provides For, Nor Contemplates, Their Use And That They Are Insufficiently Reliable* [Wm DP–20] (docket # 1687)

■ This motion seeks to preclude the Government from using convictions obtained as to William Sablan in the local courts of the Commonwealth of the Northern Mariana Islands.[8] These convictions are used by the Government to support the future dangerousness aggravating factor. Defendant argues that when evaluating the relevancy and reliability of criminal conduct relating to a nonstatutory factor,

---

7. One incident does allege criminal conduct (paragraph (b) of the incidents listed in the NOI under Institutional Settings). Defendant is not seeking through this motion to strike that incident.

8. This motion does not address convictions in the United States District Court for the District of the Northern Mariana Islands.

courts have looked to the statutory aggravating factors listed in the FDPA as a frame of reference. The statutory aggravators that relate to prior criminal conduct are limited to prior convictions for specified Federal offenses and/or Federal and State offenses. Presumably, it is argued, Congress considered such convictions not only relevant but also reliable because the convictions were obtained within our Federal or State systems.

In this case, the convictions at issue do not involve Federal or State offenses, but are related to violations of the Northern Mariana Islands Commonwealth Code. Defendant asserts that the Covenant that governs the relationship between the United States and the Commonwealth of the Northern Mariana Islands ["CNMI"] specifically envisions the CNMI as a self-governing commonwealth with the right to govern itself with respect to local affairs and to have its own courts with jurisdiction over such affairs. The CNMI established the Superior Court of the CNMI which has original jurisdiction over criminal actions. Defendant argues that based on the Covenant, the CNMI Constitution and Code and the specific language of the FDPA, it is reasonable to infer that Congress did not intend jury consideration of prior convictions other than those obtained in federal and state courts.

▇▇▇ I find that Defendant's motion must be denied. I first note, however, that I agree with Defendant that violations of the local law of the CNMI do not constitute a Federal or State offense. As to a State offense, while the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States makes clear that the CNMI is under the sovereignty of the United States, it does not make the CNMI a state. *See* 48 U.S.C. § 1801 (setting out the full text of the Covenant in the notes). Instead, the Covenant gives the people of

CNMI the right to a certain level of "self-determination". Covenant, Art. I, §§ 101, 103. Further, while the CNMI has attributes of a state, it is not a state even for purposes of application of federal law. *Northern Mariana Islands v. United States,* 279 F.3d 1070, 1072 (9th Cir.2002) ("[u]nder the plain meaning of 'State,' as it appears in the Quiet Title Act, the CNMI clearly would not qualify"), *overruling recognized on other grounds, DeNieva v. Reyes,* 966 F.2d 480, 483 (9th Cir.1992); *see also Fleming v. Dept. of Pub. Safety,* 837 F.2d 401, 406 & n. 6 (9th Cir.1988) (noting that, although the CNMI "enjoys many attributes of statehood", it is not a state). Thus, I find that a violation of the local law of the CNMI does not constitute a State offense.

▇▇▇ I also find that the offenses at issue are not Federal offenses, since the violations did not arise from federal law but from the local law of the CNMI. The Government relies heavily on 18 U.S.C. § 5 in arguing that the laws of the CNMI should be construed to be federal offenses. That statute defines the United States in a "territorial sense" that includes all places and waters subject to the jurisdiction of the United States. I agree with Defendant that this statute only describes where the provisions of the criminal code apply in connection with Title 18's reference to the United States, and does not address or relate to the issue of whether an offense is a Federal or State offense.

Thus, the next question becomes whether by limiting convictions used to support statutory aggravators to Federal or State offenses, Congress intended that offenses used in connection with nonstatutory aggravators such as future dangerousness also be limited to Federal or State offenses. This is where Defendant's motion fails, as I reject Defendant's argument that Congress intended to limit nonstatuto-

ry aggravating factors to Federal or State offenses.

While Congress was clear in limiting convictions used in connection with the statutory aggravators to Federal and/or State offenses, it did not so limit the nonstatutory aggravating factors. Indeed, Congress stated broadly in 18 U.S.C. § 3592(c) that in addition to the listed aggravating factors, the jury "may consider whether any other aggravating factor for which notice has been given exists." Nothing in § 3592(c) indicates a congressional intent that the nonstatutory aggravating factors be limited to Federal or State offenses, and this interpretation is contrary to general principles of statutory construction. As stated by the Supreme Court, "it is a general principle of statutory construction that when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 452, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)) (further quotation and internal quotation marks omitted). Since Congress included a limitation of Federal or State offenses in § 3592(c) as to many of the statutory aggravating factors but omitted them in the same statute in connection with nonstatutory aggravating factors, it must be presumed that Congress did so intentionally.

Further, Defendant has cited no evidence or authority that supports the construction of § 3592(c) that he urges the

Court to adopt. Indeed, cases construing § 3592(c) have interpreted it broadly, stating that the Government may select any factor that it believes appropriate to the case subject only to constitutional challenges and a finding by the court that the factor is admissible in the particular case. *United States v. Cooper*, 91 F.Supp.2d 90, 100 (D.D.C.2000); *United States v. Frank*, 8 F.Supp.2d 253, 264 (S.D.N.Y.1998). The cases relied on by Defendant, *Small v. United States*, 544 U.S. 385, 388, 125 S.Ct. 1752, 161 L.Ed.2d 651 (2005) and *United States v. Concha*, 233 F.3d 1249, 1254 (10th Cir.2000), are inapposite to his motion. First, they did not address the FDPA. Second and more importantly, they addressed whether foreign convictions were included as predicate offenses in statutes requiring a conviction by any court. *Id.* Here, the statutory section addressing nonstatutory aggravating factors does not require a conviction.

Finally, as noted in Section II.G., *supra*, a majority of courts have declined to adopt a per se ruling excluding evidence of unadjudicated criminal conduct in connection with the future dangerousness nonstatutory aggravating factor.[9] Evidence of unadjudicated criminal acts against a defendant is arguably less reliable than actual convictions from a court, even if that court is not a federal or state court. This also is a factor in my decision to deny Defendant's motion.

While I deny this motion, I do so only to the extent it seeks a per se rule that evidence of convictions obtained as to Defendant William Sablan in the local courts of the CNMI is inadmissible on the issue of future dangerousness. To the extent

9. *See United States v. Hall*, 152 F.3d 381, 404 (5th Cir.1998); *United States v. Davis*, No. CR.A. 01–282, 2003 WL 1873088, at *3–4 (2003); *United States v. O'Driscoll*, 250 F.Supp.2d 432, 435–36 (M.D.Pa.2002); *United States v. Beckford*, 964 F.Supp. 993, 997–99 (E.D.Va.1997); *see also Boltz v. Mullin*, 415 F.3d 1215, 1231 (10th Cir.2005) ("admission of evidence of unadjudicated offenses at a sentencing proceeding does not violate due process"), *cert. denied*, 547 U.S. 1046, 126 S.Ct. 1631, 164 L.Ed.2d 344 (2006).

Defendant argues that the specific convictions at issue are unreliable and inadmissible, the motion is denied without prejudice.

### K. *Rudy Sablan's Motion to Preclude Evidence of Alleged Statutory Aggravator (4/12/88 Conviction)* (R–51) (docket # 1699)

■ This motion seeks to preclude evidence of an alleged statutory aggravator related to a conviction obtained as to Rudy Sablan on April 12, 1988 in the Superior Court of Guam for aggravated assault. Defendant asserts that the offense at issue occurred on December 4, 1986, when he was 16 years old and that it is unclear how he was charged as an adult for this offense. Defendant argues that this conviction should be precluded because it is not a Federal or State offense as required by 18 U.S.C. § 3592(c)(4), the underlying facts do not meet the definition of "serious bodily injury" under § 3592(c)(4), and the conviction is unduly prejudicial since Defendant was a juvenile. Further, it is argued that this conviction would not be considered under the sentencing guidelines.

I find that this motion should be granted. Unlike William Sablan's convictions from the CNMI considered in the previous section, the conviction at issue is being used to support a statutory aggravating factor under 18 U.S.C. § 3592(c)(4) that requires the predicate offense to be a Federal or State offense. More specifically, the statute states:

(c) **Aggravating factors for homicide.**—In determining whether a sentence of death is justified ... the jury ... shall consider each of the following aggravating factors for which notice has been given and determine which, if any, exist: ...

(4) **Previous conviction of other serious offenses.**—The defendant has previously been convicted of 2 or more Federal or State offenses, punishable by a term of imprisonment of more than 1 year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person.

■ I find that a conviction under a local law of Guam is not a Federal or State offense within the meaning of § 3592(c)(4). First, I find that Guam is not a state, *Guam v. Guerrero*, 290 F.3d 1210, 1216 (9th Cir.2002), and there is thus no "State" offense at issue. Second, I find that the Guam conviction is not a Federal offense, since Rudy Sablan's aggravated assault violation related to a local Guam code. While Guam as a territorial government may be acting as an agent of the federal government when it enacts criminal laws, *United States v. Wheeler*, 435 U.S. 313, 321, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), the Government has presented no evidence or authority that the local laws enacted by Guam are considered to be Federal offenses within the meaning of the statutory aggravating factors listed in the FDPA.

Further, the Ninth Circuit in *Guerrero* specifically noted a difference between a territorial court's application of a federal statute versus a matter of local concern. *Guerrero*, 290 F.3d at 1213. As to the decision of a territorial court on a federal statute, review was de novo. *Id.* However, on matters of local concern in Guam, the court applied a highly deferential standard. *Id.* (quoting *De Castro v. Bd. of Com'rs of San Juan*, 322 U.S. 451, 454, 64 S.Ct. 1121, 88 L.Ed. 1384 (1944) (declining to overrule a territorial court on matters of local concern absent "clear" or "manifest" error or an "inescapably wrong" interpretation)). Further, while Guam "has no inherent right to govern itself" except as Congress may determine, it has the ability to create both a federal district court with original jurisdiction over federal questions and other local courts. *People of the Ter-*

*ritory of Guam v. Okada,* 694 F.2d 565, 568–69 & n. 4 (9th Cir.1982). This again shows a distinction between a court that addresses local offenses of Guam law and a federal court that addresses federal offenses.

Another case that supports the distinction between federal offenses in a territory like Guam and offenses of local laws is *United States v. Acosta–Martinez,* 252 F.3d 13 (1st Cir.2001), a case relied on by the Government at the hearing. The First Circuit ruled therein that the FDPA was applicable to Puerto Rico. *Id.* at 20. In making this ruling, however, the court made clear that the FDPA was applicable only to federal criminal prosecutions, not to Puerto Rican criminal laws. *Id.* It stated in that regard, "[t]his choice by Congress does not contravene Puerto Rico's decision to bar the death penalty in prosecutions for violation of crimes under the Puerto Rican criminal laws in the Commonwealth courts .... [t]he choice simply retains federal power over federal crimes." *Id.* Thus, the fact that the First Circuit held the FDPA applicable to federal crimes in Puerto Rico in no way supports the Government's argument that the local laws of Guam should be deemed to be federal offenses. Instead, *Acosta–Martinez* supports the opposite conclusion, as shown by the distinction made therein between federal offenses and violations of the local law.

I also find *Small v. United States,* 544 U.S. 385, 125 S.Ct. 1752, 161 L.Ed.2d. 651 (2005) and *United States v. Concha,* 233 F.3d 1249, 1254 (10th Cir.2000) persuasive. While not directly on point since they do not address the FDPA, they held that foreign convictions are not predicate offenses for purposes of 18 U.S.C. §§ 922(g)(1) and 924(e) which require that the defendant have a previous conviction in any court. Here, the statutory aggravating factor is arguably more restrictive in scope than the above-referenced statutes, as it is limited not to any conviction but to Federal or State convictions.[10]

Finally, Defendant has correctly pointed out that Congress clearly had the ability in the statutory aggravating factors to include territorial offenses or to define "State" or "Federal" offenses to include same. Indeed, in 18 U.S.C. § 5032 Congress defined a "State" for purposes of that statute to include "any commonwealth, territory, or possession of the United States." Similarly, in *United States v. Wray,* No. CR.2002–53, 2002 WL 31628435 (D.Vi.2002), the defendant argued that he could not be liable for money laundering under 18 U.S.C. § 5032 because he did not bring currency into the United States, but into the Virgin Islands. 2002 WL 31628435, at *1. The court disagreed, noting that the definition of the United States found in the USA Patriot Act specifically included the Virgin Islands and other territories or possessions of the United States. *Id.* at *1–2. Another statute, 18 U.S.C. § 1951 which makes interference with commerce by threats or violence a crime, defines "commerce" to include commerce within a Territory or

---

**10.** The Government relies on *United States v. Carriaga,* No. 97–10151, 1998 WL 31527 (9th Cir.1998) for its argument that a violation of local Guam law would be a predicate offense under the FDPA. That case analyzed whether a conviction under a Guam burglary statute could be a predicate offense under 18 U.S.C. § 924(e). *Id.,* 1998 WL 31527, at * 2. Section 924(e) does not limit the predicate convictions to Federal or State offenses, but refers to convictions by any court. Further, there is no discussion in *Carriaga* as to why an offense of a Guam burglary statute qualifies as a predicate offense, nor is there any acknowledgment of the issues raised as to foreign convictions by the Supreme Court in *Small.* Finally, it is unpublished and is not from this Circuit. Accordingly, I do not find it persuasive.

Possession of the United States. Finally, 18 U.S.C. § 5 defines the "United States" for purposes of Title 18 to include territories.

From the foregoing, it is clear that if Congress had meant the predicate offenses of § 3592(c)(4) to include territorial offenses, it could have so stated. Alternatively, it could have defined the "State" or "Federal" offenses referenced therein to include territories. The fact that it did not do so shows, in my opinion, an intent by Congress that offenses of territorial law not be included as predicate offenses for purposes of that statute.

Since I find that the offense at issue is not a Federal or State offense as required by § 3592(c)(4), I find that the Government may not rely on the April 1988 conviction of Rudy Sablan from the Superior Court of Guam to support the statutory aggravating factor under 18 U.S.C. § 3592(c)(4). Accordingly, Rudy Sablan's Motion to Preclude Evidence of Alleged Statutory Aggravator (4/12/88 Conviction) is GRANTED.[11]

L. *Defendant William Sablan's Motion To Strike Conviction Under 18 U.S.C. § 924(h) from the Government's NOI as a Basis for the Alleged Statutory Aggravating Factor Set Out in 18 U.S.C. § 3592(c)(2)* [Wm DP–27] (docket # 1715)

 This motion seeks to strike from the NOI the prior conviction for violation of 18 U.S.C. § 924(h) that is used to support the statutory aggravating factor under 18 U.S.C. § 3592(c). Defendant argues that the statutory aggravating factor requires a prior conviction for a Federal or State offense that involved the use of a firearm against another. I deny this motion for the reasons stated below.

The NOI refers to William Sablan's guilty pleas in 1999 to three criminal felony charges brought in Criminal Case No. CR99–00018 in the United States District Court for the Northern Mariana Islands. The charges to which Defendant pled guilty were for hostage taking in violation of 18 U.S.C. §§ 1203 and 2, felon in possession in violation of 18 U.S.C. § 922(g)(1), and transferring a firearm knowing that it would commit a crime of violence in violation of 18 U.S.C. § 924(h). The Government classified all three as previous convictions of a violent felony involving a firearm under 18 U.S.C. § 3592(c)(2) and listed them in its Amended NOI.

Defendant attacks the third charge to which he pled guilty involving a violation of 18 U.S.C. § 924(h). He argues that his guilty plea cannot be used to support the statutory aggravating factor because the count did not charge a federal offense. Instead, it pled that the firearm at issue would be used to commit a crime of violence, to wit, assault with a deadly weapon under the Commonwealth Code of the Northern Mariana Islands. In other words, the specified "crime of violence" for which the gun was allegedly transferred was only a crime under the criminal code of the CNMI.

I reject Defendant's argument. First, I find that the statutory aggravating factor at issue only requires that the predicate offense be a Federal or State offense. Here, it is undisputed that the predicate offense at issue is a Federal offense involving a violation of 18 U.S.C. § 924(h). Nothing in § 3592(c) or the FDPA as a whole requires that an underlying offense which formed the basis of the Federal offense also be based on a Federal offense. Further, Defendant has cited no authority

---

**11.** Since I grant the motion on the grounds that the Guam offense in April 1988 does not qualify as a Federal or State offense, I need not address Defendant's other arguments as to why this conviction should be excluded.

that supports this argument in the context of the FDPA or any case where the death penalty is sought.

I further find that it is not appropriate in this proceeding for Defendant to collaterally attack the merits of the underlying federal conviction obtained in a federal court, *i.e.*, the United States District Court for the District of the Northern Mariana Islands. It is undisputed that Defendant did not raise this issue or any other challenge when he was charged in 1999 with a violation of the statute. Instead, he pled guilty to the charge. It is also undisputed that he failed to raise this issue on direct appeal of that conviction or by collateral attack, and the time to do so has passed. Accordingly, I find that the conviction should be deemed valid under principles of finality. *See Daniels v. United States*, 532 U.S. 374, 382, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001) (holding that if a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available, that defendant may not collaterally attack his conviction through a motion under 28 U.S.C. § 2255, subject to certain exceptions not applicable here); *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 403–05, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001) (extending this holding to a collateral attack under 28 U.S.C. § 2254); *United States v. Garcia*, 42 F.3d 573, 581 (10th Cir.1994) ("with the exception of a collateral attack based on the complete denial of counsel, a district court sentencing a defendant under the career offender provisions of the Guidelines cannot consider a collateral attack on a prior conviction").[12]

While I recognize that the authority cited above did not address the issue at hand, I believe the rationale expressed in those cases for precluding review of the underlying convictions would also extend to an attempt to collaterally attack the sentence in connection with a statutory aggravating factor under the FDPA. The policy reasons that Defendant cites for death being different do not, in my opinion, support a different result. While I agree with Defendant that death is different, *see Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), this does not mean that a defendant in a death case should be allowed to adjudicate or attack the convictions which form the basis for the aggravating factors. This would create a logistical nightmare, as it would essentially allow the defendant to relitigate the underlying convictions. I do not think that Congress intended such a result when it specified what predicate offenses qualify for the statutory aggravating factors.

Other courts have made holdings which, while not directly on point as they did not address this issue, lend support to this conclusion. *See United States v. Chong*, 98 F.Supp.2d 1110, 1121 (D.Hawai'i 1999) ("[t]he Court will not permit either party to relitigate the merits underlying the convictions because of concerns of waste of time, cumulative information, and confusion of the issues .... [h]owever, the Court will permit an appropriate amount of information to provide the necessary context for the jury to perform its weighing function"); *see also United States v. Rodriguez*, No. 2:04–CR–55, 2006 WL 487117, at *2 (D.N.D.2006) (applying the same standard as *Chong* and holding that neither party would be allowed "to intro-

---

12. *United States v. McLemore*, 815 F.Supp. 432 (S.D.Ala.1993), *aff'd*, 28 F.3d 1160 (11th Cir.1994), relied on by Defendant, is not controlling as it involved a challenge to the stat-
ute on direct appeal. Here, as discussed earlier, Defendant did not file a direct appeal or challenge the conviction in any way during the prosecution of that charge.

duce evidence regarding issues such as whether Rodriguez should have pled guilty or the relative strength of the prosecution's case .... [t]hat type of evidence would amount to relitigation of the previous convictions").

Finally, I note that the other requirements of 18 U.S.C. § 3592(c)(2) appear to be satisfied, and have not been challenged by Defendant in this motion. Here, in addition to the fact that the statutory aggravating factor relies on a Federal conviction, Defendant has not disputed that the crime was punishable by a term of imprisonment of more than one year. Further, Defendant has not disputed that the charge involved the use or attempted or threatened use of a firearm. According to the Government, the charges relates to the takeover of the Central Male Detention Facility of the Department of Public Safety in Saipan by Defendant and the taking of hostages wherein a firearm was involved.[13]

In conclusion, I find that William Sablan may not challenge in this proceeding the underlying conviction to which he pled guilty involving a charged violation of § 924(h). Further, the Government has shown, for purposes of this motion, that the conviction involved a Federal offense and that the other requirements of the statutory aggravating factor are satisfied. Accordingly, I find that Defendant's motion seeking to strike the conviction under 18 U.S.C. § 924(h) from the NOI as a basis for the statutory aggravating factor under 18 U.S.C. § 3592(c)(2) must be denied.

M. *William Sablan's Motion To Strike Conviction Under 18 U.S.C. § 924(g)(1) from the Government's NOI as a Basis for the Alleged Statutory Aggravating Factor Set Out in 18 U.S.C. § 3592(c)(2)* [Wm DP–29] (docket # 1724)

 This motion is similar to the motion discussed in the previous section (Wm DP–27). It also seeks to strike from the NOI a prior conviction in Criminal Case No. CR99–00018, the action in which William Sablan pled guilty to three charges brought in the United States District Court for the Northern Mariana Islands. In the previous motion, Defendant sought to strike count three involving a violation of § 924(h). This motion seeks to strike count two for violation of 18 U.S.C. § 922(g)(1) from the NOI.[14] That offense is used as the predicate for the statutory aggravating factor under 18 U.S.C. § 3592(c)(2) for "Previous Conviction of Violent Felony Involving Firearm."

Defendant asserts that the conviction at issue alleged a violation of 18 U.S.C. § 922(g)(1), which prohibits a person "who has been convicted in *any court* of a crime punishable by imprisonment for a term exceeding one year ... to possess in or affecting commerce, any firearm ...." (emphasis added). The conviction which formed the basis of the violation of § 922(g)(1) was obtained in the Superior Court of the CNMI for violation of the CNMI criminal code. Defendant argues that foreign convictions, including a conviction from the CNMI, do not qualify as predicate offenses for purposes of § 922(g)(1), citing *Small v. United States,*

13. While § 924(h) itself does not have as an element the use of a firearm against another person, the Fourth Circuit has held that one can look beyond the fact of conviction in a death case to determine whether a firearm was involved. *United States v. Higgs,* 353 F.3d 281, 316 (4th Cir.2003). The Fourth

Circuit noted that this is because an individualized determination is required in the death penalty context. *Id.* I find the Fourth Circuit's reasoning persuasive and adopt it here.

14. The caption mistakenly refers to § 924(g)(1).

544 U.S. 385, 125 S.Ct. 1752, 161 L.Ed.2d 651 (2005). Since the conviction under § 922(g)(1) was not valid, Defendant concludes that the statutory aggravating factor based on this predicate offense must be stricken.

Turning to my analysis, I first note that I do not accept the Government's argument that a local conviction from the CNMI relating to the CNMI Code should be construed to be a "Federal" or "State" offense for purposes of 18 U.S.C. § 3592(c)(2). *See* Section II.J., *supra.* Nonetheless, I still find for the reasons set forth below that this motion should be denied.

18 U.S.C. § 3592(c)(2) states as a statutory aggravating factor that "the defendant has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a firearm . . . ." Here, it is undisputed that the statutory aggravating factor relies on a *Federal* conviction, i.e., the violation of § 922(g)(1) to which Defendant pled guilty. That conviction was not obtained in a local CNMI court. Second, as discussed earlier, the plain language of § 3592(c)(2) requires only that the qualifying offense be a Federal or State offense. The statute does not require that the offense which formed the basis of the qualifying offense also be a Federal or State offense. Third, Defendant does not dispute that the remaining requirements of § 3592(c)(2) are met.

Further, while the statute which forms the basis of the federal offense (§ 922(g)(1)) has been interpreted not to apply to foreign convictions, *Small,* 544 U.S. at 390–91, 125 S.Ct. 1752, Defendant did not raise this issue below when he was charged with a violation of the statute. He also did not raise the issue on direct appeal or by collateral attack, and the time to do so has passed. Accordingly, just as with

Wm DP–27, I find that the conviction should be deemed valid under principles of finality. *See Lackawanna County District Attorney v. Coss,* 532 U.S. 394, 402–04, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001); *Daniels v. United States,* 532 U.S. 374, 382, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001); *United States v. Garcia,* 42 F.3d 573, 581–82 (10th Cir.1994). Further, as discussed previously, cases under the FDPA have held that parties should not be allowed to relitigate the merits of underlying convictions. *United States v. Rodriguez,* No. CRIM. 2:04–CR–55, 2006 WL 487117, at *2 (D.N.D.2006); *United States v. Chong,* 98 F.Supp.2d 1110, 1121 (D.Hawai'i 1999). Accordingly, I find that Defendant's motion to strike the conviction under § 922(g)(1) from the NOI as a basis for the statutory aggravating factor at issue must be denied.

## III. *CONCLUSION*

Based upon the foregoing, it is

ORDERED that William Sablan's Motion To Strike The Nonstatutory Aggravating Factor Of Future Dangerousness On The Grounds Congress Did Not Intend It To Be Considered In Aggravation [Wm–DP 21] (docket # 1688) is **DENIED.** It is

FURTHER ORDERED that William Sablan's Motion to Strike Future Dangerousness on the Grounds That Neither Experts Nor Lay Persons, Including Jurors, Are Capable of Reliably Predicting It [Wm DP–25] (docket # 1706) and Rudy Sablan's Motion To Preclude Expert Testimony On The Issue Of Future Dangerousness (R–50) (docket # 1698) are **DENIED** to the extent they seek a per se rule that this type of testimony is inadmissible. The motions are **DEFERRED** to the extent they ask the Court to hold a hearing and exclude specific expert or lay testimony that the Government may seek to intro-

duce and on other issues raised in the motions. It is

FURTHER ORDERED that William Sablan's Motion To Strike Non–Institutional Incidents From Nonstatutory Aggravating Factor Of Future Dangerousness [Wm DP–17] (docket # 1684) is **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART.** The motion is **GRANTED** to the extent it seeks (1) to strike any non-institutional incidents that were withdrawn by the Government in its Second Amended NOI, and (2) a ruling that future dangerousness as to the other non-institutional incidents be evaluated in the context of life in a prison setting. The motion is **DENIED WITHOUT PREJUDICE** as to the specific non-institutional incidents that William Sablan seeks to strike. It is

FURTHER ORDERED that Rudy Sablan's Motion in Limine Regarding Convictions and Incidents Alleged in Support of Non–Statutory Aggravating Factor of Future Dangerousness (R–53) (docket # 1701) is **GRANTED IN PART AND DEFERRED IN PART.** It is **GRANTED** to the extent it seeks to strike the non-institutional incidents alleged as to Rudy Sablan, since such incidents were withdrawn by the Government in the recently filed Second Amended NOI. The motion is **DEFERRED** in all other respects to the August 2006 hearing. It is

FURTHER ORDERED that William Sablan's Motion to Strike Threatening Violence, Low Rehabilitative Potential, and Lack of Remorse From The Government's Notice Of Intent To Seek The Death Penalty [Wm DP–22] (docket # 1689) is **DENIED AS MOOT IN PART AND DENIED WITHOUT PREJUDICE IN PART** consistent with this Order. It is

FURTHER ORDERED that Rudy Sablan's Motion in Limine Regarding the "Heinous or Depraved" Statutory Aggravating Factor [R–52] (docket # 1700) is **DENIED WITHOUT PREJUDICE.** It is

FURTHER ORDERED that William Sablan's Motion To Limit Evidence Of Prior Convictions To The Fact Of Conviction And To Exclude Evidence Of Underlying Conduct [Wm DP–19] (docket # 1686) and Rudy Sablan's Motion to Limit Evidence of Prior Convictions to Statutory Requirements (R–55) (docket # 1703) are **DENIED** as to the legal arguments contained in the motions, and **DENIED WITHOUT PREJUDICE** as to challenges to the specific convictions at issue and what underlying facts the Government may seek to introduce as to same. It is

FURTHER ORDERED that William Sablan's Motion To Prohibit The Government From Introducing Unadjudicated Criminal Conduct During the Penalty Phase [Wm DP–24] (docket # 1707) is **DENIED** to the extent it seeks a per se rule that unadjudicated criminal conduct is not admissible and **DENIED WITHOUT PREJUDICE** as to whether specific unadjudicated criminal conduct that the Government seeks to admit should be excluded under 18 U.S.C. § 3593(c). It is

FURTHER ORDERED that William Sablan's Motion to Strike Institutional Setting Incidents from Future Dangerousness on the Grounds that the Conduct Alleged Is Not Criminal Conduct [Wm DP–18] (docket # 1685) is **DENIED** to the extent it seeks a per se rule that the unadjudicated criminal conduct in connection with institutional setting incidents is not admissible and **DENIED WITHOUT PREJUDICE** as to whether specific unadjudicated criminal conduct that the Government seeks to admit should be excluded. It is

FURTHER ORDERED that William Sablan's Motion to Strike Incidents Listed in Support of the Government's Nonstatutory Aggravating Factor "Future Danger-

ousness" on the Grounds They Are Insufficiently Relevant and Reliable [Wm DP–16] (docket # 1683) is **DEFERRED** until the August 2006 hearing. It is

FURTHER ORDERED that William Sablan's Motion To Prohibit The Use of Prior Convictions Obtained in The Local Courts Of The Commonwealth Of The Northern Mariana Islands On The Grounds That The Federal Death Penalty Act Neither Provides For, Nor Contemplates, Their Use And That They Are Insufficiently Reliable [Wm DP–20] (docket # 1687) is **DENIED** to the extent it seeks a per se rule that evidence of convictions obtained from the local courts of the CNMI are inadmissible, and **DENIED WITHOUT PREJUDICE** as to the admissibility of specific convictions from the CNMI. It is

FURTHER ORDERED that Rudy Sablan's Motion to Preclude Evidence of Alleged Statutory Aggravator (4/12/88 Conviction) (R–51) (docket # 1699) is **GRANTED.** It is

FURTHER ORDERED that Defendant William Sablan's Motion To Strike Conviction Under 18 U.S.C. § 924(h) from the Government's NOI as a Basis for the Alleged Statutory Aggravating Factor Set Out in 18 U.S.C. § 3592(c)(2) [Wm DP–27] (docket # 1715) is **DENIED.** It is

FURTHER ORDERED that Defendant William Sablan's Motion To Strike Conviction Under 18 U.S.C. § 924(g)(1) from the Government's NOI as a Basis for the Alleged Statutory Aggravating Factor Set Out in 18 U.S.C. § 3592(c)(2) [Wm DP–29] (docket # 1724) is **DENIED.** Finally, it is

ORDERED that in advance of the July 24, 2006, deadline for the Government to submit a proffer, the Government shall provide to Defendants the most complete information that it can as to incidents that the Government seeks to admit in connection with aggravating factors that occurred outside the United States.